Filed 2/9/15; pub. order 3/11/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | C075687 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>   v.<br><br>T.C.,<br><br>        Defendant and Appellant. | (Super. Ct. No. JD232884) |

Appellant, de facto parent of minor M.M., appeals from the juvenile court's order removing the minor from her home at the selection and implementation hearing. (Welf. & Inst. Code, §§ 366.26, 395.)[1] She contends she was entitled to notice and a hearing

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

prior to the minor's removal, and that the juvenile court abused its discretion in summarily ordering the removal. As we will explain, we agree that appellant was entitled to notice and the opportunity to object and request a hearing prior to the minor's removal. We also agree that the removal was an abuse of discretion, as it was unsupported by the evidence in the then-existing record. We shall vacate the order and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

Less than a month after her birth, in December 2012, minor M.M. was placed with appellant, a licensed foster care provider. She had spent five days with her paternal great-great-aunt (aunt), but was removed due to paternity concerns. At the disposition hearing, the court ordered reunification services to both parents. By August 2013, the Sacramento Department of Health and Human Services (DHHS) was recommending termination of services.

In July 2013 (when the minor's half sibling who had also been placed with appellant was moved to a relative's home for adoption), appellant expressed reservations as to whether she wanted to adopt the minor. Accordingly, on August 2, 2013, DHHS contacted the aunt to inquire whether she was interested in placement, as paternity concerns had been resolved. The aunt reported that she was interested and had not come forward earlier because she had wanted to give the mother an opportunity to reunify. DHHS referred the aunt for a kinship assessment.

On September 10, 2013, appellant told DHHS that she was, in fact, interested in adopting the minor.

The juvenile court terminated reunification services on September 18, 2013. Notice of the section 366.26 hearing, scheduled for January 15, 2014, was mailed to appellant. The notice did not indicate removal from appellant's home was proposed or requested by any party.

2

On December 30, 2013, DHHS filed a section 366.26 hearing report recommending termination of parental rights and selection of adoption as the permanent plan. The report indicated the minor was showing some stranger anxiety around new people and looked to appellant to meet her needs. The report added that appellant had "expressed her desire to provide permanency for [M.M.] through adoption, and she [had] begun an adoption homestudy." Also, the aunt had "expressed a desire for [M.M.] to be placed in her care and intends to pursue permanency for [M.M.] through adoption." The kinship unit had not completed the relative assessment. The report did not recommend one placement over the other, nor did it signal DHHS was seeking to remove the minor from appellant's home. The report was not served on appellant.[2]

On January 14, 2014, the juvenile court granted appellant de facto parent status. Also on January 14, 2014, at approximately 3:00 p.m., DHHS filed an addendum report for the section 366.26 hearing the next day. DHHS reported that the aunt's home had been approved for placement. The aunt was intending to quit her job if the minor were placed with her, was willing to adopt the minor, and could provide her with a loving, stable home. Her home was in a suburban area, close to schools, parks, shopping, and transportation. She had successfully raised two children and there were not any concerns regarding her ability to meet the minor's needs. She had been visiting the minor on a monthly basis since August 2013, and "visitation had been increased to include overnight visits" on December 26, 2013. There was no information on how many, if any, such visits had occurred or how they went. DHHS recommended the minor be moved to the

_____

[2] We are not suggesting that this report and additional reports and orders we describe *post* should have been served on appellant. (See § 827 et seq.) Our point is that the record fails to reflect that appellant was made aware of the majority of the information made available to the parties, including changing recommendations by DHHS.

aunt's home and indicated a home study would commence once the minor was moved. The addendum report was not served on appellant.

The January 15, 2014, hearing took place before the juvenile court (Borack, J.) that had presided over the majority of the hearings in the case, including the disposition hearing and the review hearing at which services were terminated. The court stated it was "somewhat confused as to why there was an assessment going forward on relatives when we were already at the selection and implementation hearing. The child had been placed with the current care provider when the child was approximately three weeks old or so." Noting that as of September 10, 2013, DHHS was aware that appellant was committed to adoption and had begun an adoptive home study, the court noted that appellant was to be assessed and identified as a prospective adoptive parent.

DHHS responded that either placement would be appropriate and explained that the kinship assessment for the aunt had begun on August 30, 2013, but there had been several delays. Minor's counsel concurred, adding, "So I would just request the Court to maybe take this issue under submission. I believe the father's attorney is going to be requesting a continuance [because father was absent due to incarceration]. Maybe we can continue this matter to that date as well, because I do think we should review."

Mother's counsel then joined in the request for a continued section 366.26 hearing, as she had just received DHHS's late-filed addendum that day. The court responded: "While the Court understands that there are delays in kinship assessments that we experience all the time in this court . . . I don't read anything in either case law or statutory law that says except when [DHHS] can't do something in a timely manner. The focus for case law and the focus for statutory law is always the child. And both federal law as well as state law emphasize stability for the child. *All of the information in the report that was prepared for the 366.26 hearing indicates that the child is stable in the child's current placement, that the child has been there the entire child's life, that the child is going through--the child, being on track in her emotional development shows*

4

*some stranger anxiety around new people; and although we know these new people are relatives, the child does not necessarily know that these people are relatives. The only mother this child has really ever known is the current caretaker. The report indicates that she desires to provide permanency through adoption, that she has begun an adoptive home study. And at this point in time the law prefers the current caretaker to relatives. That's the way the Court reads the law.*" (Italics added.) The court then continued the 366.26 hearing to January 22, 2014.[3]

On January 22, 2014, an assigned judge (Petre, J.) was hearing Judge Borack's calendar. Counsel for DHHS requested that Judge Petre adopt the findings and orders it attached to its January 15, 2014, addendum report, which included placing the minor with the aunt. Counsel for the parents and minor concurred in the proposed placement. The court then asked the individuals in the audience to stand up and indentify themselves. The paternal grandmother introduced herself, and then the aunt identified herself as the minor's aunt. The court asked the aunt if her home was where the minor was currently placed and *appellant* responded from the audience, "No, I am the de facto parent, and the current caregiver." Appellant provided her name, as did the aunt, and then counsel for DHHS interjected, referencing the aunt, "That's the recommendation. She passed kinship. She's [a] relative." Appellant was not asked to join the parties at counsel table, or asked her position on the proposed change of placement.

The court thanked everyone for being there and then asked the parties if "anyone wish[ed] to be heard further on this issue." The court then indicated it had read and considered the report prepared for the hearing, found the minor was likely to be adopted, and terminated parental rights. At this point, counsel for DHHS requested that the aunt

---

[3] We note that the minute order from the January 15 hearing indicates only that "[t]he issue of relative placement preference at a 366.26 WIC hearing was argued/discussed for the record" in addition to noting the continuance. The order was not served on appellant.

be appointed the educational rights holder. The court granted that request and then asked if it should place the minor with the aunt at that time. Counsel for DHHS responded that the placement change was included in its proposed orders from the section 366.26 hearing, and the court ordered the minor placed with the aunt. The order changing placement was contained in the form order generated from the selection and implementation hearing.

At no time during the January 22, 2014, hearing did *any* counsel for the various parties inform Judge Petre that Judge Borack had previously rejected the proposed removal of the minor from appellant's home. Nor did counsel ever address or argue the reasoning for the change in placement beyond that the aunt was a "relative."

Appellant filed a notice of appeal after the conclusion of the hearing.[4]

## DISCUSSION

In her briefing, appellant contends that because she qualified as a prospective adoptive parent she was entitled to notice and a hearing before the minor was removed from her and placed with the aunt. She adds that the juvenile court abused its discretion in entering the disputed placement order without hearing evidence regarding the minor's best interests, and instead relying solely (and erroneously) on relative preference. Respondent DHHS argues first that appellant was not entitled to notice due to the timing of the removal, which it argues was prior to the section 366.26 hearing. Next, DHHS argues that any error was harmless and any objection to error was forfeited. DHHS adds

---

[4] On June 4, 2014, appellant filed a motion to augment the record on appeal. We deny appellant's motion because augmentation is unnecessary for our determination of the issues in this appeal. On June 20 and again on July 2, 2014, we requested supplemental briefing regarding whether subsequent events affected the positions or arguments of the parties or rendered the appeal moot. After receiving briefing, we agree with both parties that this appeal is not moot.

6

that there was no abuse of discretion and that appellant has forfeited any claim of caretaker preference.  As we explain *post*, we agree with appellant on the relevant points.

I

*Notice and Hearing Requirements Pursuant to Section 366.26*

Appellant argues she met the requirements for designation as a prospective adoptive parent pursuant to section 366.26, subdivision (n)(1) and (2), which entitled her to notice, as provided by subdivision (n)(3), prior to the minor's removal.  Subdivision (n)(3) requires DHHS to notify a designated prospective adoptive parent, *or a current caretaker who meets the criteria to be a prospective adoptive parent*, prior to a change in a minor's placement.  The prospective adoptive parent, *or current caretaker who meets the criteria*, may then object and request a hearing and may also request, in the case of a current caretaker, to be designated as a prospective adoptive parent.  (§366.26, subd. (n)(3)(A).)  If the court sets a hearing regarding the proposed removal, DHHS must prove by a preponderance of the evidence that removal is in the minor's best interests.  (§366.26, subd. (n)(3)(B); *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 45.)

The dispute here is whether the statute quoted above actually applied to appellant at the time DHHS was required to provide the notice at issue.

DHHS argues not that appellant failed to meet the *requirements* to be designated a prospective adoptive parent (see §366.26, subd. (n)(1), (2); the minor had lived with appellant for 14 months, she had expressed a commitment to adopt the minor, and she had taken at least two steps to facilitate the adoption process--applying to be a de facto parent and beginning an adoption home study), but instead that "a caretaker cannot qualify as a prospective adoptive parent . . . until the time of the section 366.26 hearing." Therefore, because the plan to move the minor was *hatched* before that hearing (although admittedly *implemented* at the time of the hearing), the period of time prior to the hearing during which DHHS would have been required to notice appellant (were she covered by the requirement) had already passed by the arrival of the hearing date.

7

We disagree with this circular reading of the notice requirements. Before a permanency hearing is held, DHHS is charged with preparing a "preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian, particularly the caretaker . . . . (§ 366.21, subd. (i)(D).) "Prior to a change in placement and as soon as possible after a decision is made to remove a child from the home of a designated prospective adoptive parent, the agency shall notify the court, the designated prospective adoptive parent or the current caretaker, *if that caretaker would have met the threshold criteria to be designated as a prospective adoptive parent pursuant to paragraph (1) on the date of service of this notice*, the child's attorney, and the child, if the child is 10 years of age or older, of the proposal in the manner described in Section 16010.6." (§ 366.26, subdivision (n)(3), italics added.)

DHHS does not dispute that here appellant would have met the threshold criteria to be designated as a prospective adoptive parent at the time DHHS made the decision to seek removal. Instead, relying on section 366.26, subdivision (n)(1), DHHS argues that it was not required to give appellant notice of the proposed change because she could not have been actually *designated* the prospective adoptive parent until the day after it notified the court of its proposal--at the section 366.26 hearing. This is because section 366.26, subdivision (n)(1) does not provide for the court's designation of the current caretaker as a prospective adoptive parent until the section 366.26 hearing is held. Simply put, there cannot be a designated prospective adoptive parent until the child has been freed for adoption, generally as a result of the termination of parental rights.

Although we certainly agree that as of January 14, 2014, appellant was not yet *eligible* to be designated a prospective adoptive parent due to the timing requirement of the designation, she was certainly *qualified* to be so designated as of that date. In its argument, DHHS conflates the appellant's achievement of threshold qualifications with her achievement of ultimate eligibility. As we have described *ante*, the statute merely requires qualification, not eligibility, in order to be entitled to notice.

8

Our decision in *In Re Jayden M.* (2014) 228 Cal.App.4th 1452 (*Jayden M.*) does not change this analysis. First and foremost, *Jayden M.* was decided on standing. Second, to the extent that we addressed the notice entitlement in *Jayden M.*, we noted that the minor in that case was removed *prior* to the section 366.26 hearing, thus the notice requirements contained in that statute were inapplicable. We went on to suggest that had the removal been concurrent to the hearing or subsequent thereto (as was the minor's removal in the instant case), our analysis would have been different. (*Jayden M.*, *supra*, at pp. 1458-1459 ["Here, though the record is not explicit, it appears the minor was removed from his paternal aunt and uncle's custody prior to the continued hearing on the termination of parental rights. Thus, section 366.26, subdivision (n) is inapplicable to the instant facts. Furthermore, even if Jayden [were] removed . . . concurrent with or subsequent to the selection and implementation hearing . . . [the] parents do not have standing to assert rights under section 366.26, subdivision (n)"].)

"In enacting section 366.26, subdivision (n), the Legislature intended to 'limit the removal of a dependent child from his or her caretaker's home after parental rights are terminated, if the caretaker is a designated or qualified as a prospective adoptive parent, as defined, in order to 'protect the stability and best interests of vulnerable children.' (Assembly Com. on Judiciary, com. on Sen. Bill No. 218 (2005-2006 Reg. Sess.) as amended June 2, 2005, p. 5.)" (*T.W. v. Superior Court, supra,* 203 Cal.App.4th at p. 44.) Here, at the same hearing--the section 366.26 hearing--and in the same order, the juvenile court, at the urging of the attorneys and apparently without any idea that the request for removal had already been rejected, terminated parental rights and then removed the minor from the only home she had ever known. Notice to her current caretaker was required.

9

## II

### *Forfeiture and Harmless Error*

DHHS next argues that any error in failing to formally notify appellant was harmless because she was in court for the section 366.26 hearing and thus had ample "notice and a meaningful opportunity to be heard." DHHS dovetails this argument into a forfeiture argument, asserting that appellant had the opportunity to object from her position in the audience at the (continued) hearing and failed to do so. We are not persuaded by either argument.

Although appellant may have known that DHHS was considering the aunt as well as appellant for ultimate placement, this is not the written notice that is contemplated and mandated by the statute. As we have detailed, appellant was not served with any of the reports, which themselves were inconclusive about the recommendation to change placement until the late-filed addendum on January 14, 2014. Significantly, at the January 15, 2014, hearing--which was the first date on this record that appellant could have even arguably had an inkling of DHHS's pending request to remove the minor--the court decidedly rejected the request to change placement, explaining at length why the request was improvidently made. Although the termination hearing was continued to provide father with an opportunity to be present, the matter of the minor's placement appeared to be resolved, and appellant was not privy to any reports or minute orders suggesting otherwise.

When the parties appeared at the continued hearing on January 22, 2014, appellant had no notice, or even reason to suspect, that DHHS intended to continue to pursue its request to remove the minor from her home. Appellant, although previously designated a de facto parent, was not included at counsel table, but instead remained in the audience. She was not represented by counsel. The court's invitation to comment was directed at those who were being permitted to argue at counsel table, not those individuals in the audience who had merely been acknowledged and thanked for their attendance.

10

Under these circumstances, we do not agree that appellant either received or forfeited her right to statutory notice and the opportunity to object to the minor's removal. By the failure to provide notice to appellant, she was deprived of the opportunities both to request designation as a prospective adoptive parent and to request to be heard regarding removal. Thus we reject the harmless error argument.

III

*Abuse of Discretion*

Appellant further contends the court abused its discretion in entering the removal order by (apparently) basing it solely on relative preference, and without any evidence regarding the minor's best interest. DHHS counters that relative preference was not the basis for the court's orders and, in any event, any preference for placement with appellant as the current caretaker is inapplicable. It adds that even if applicable, any claim of preference is forfeited due to appellant's failure to claim it below.

First, for reasons we have described *ante*, we decline to find the argument forfeited due to appellant's failure to object at the time of the hearing.

Second, we note that the relative placement preference did not apply at this stage in the proceedings. "[T]he statutory preference for placement of a dependent child with a relative [citation] does not apply to a placement made as part of a permanent plan for adoption." (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 276-277, fn. omitted.) Once reunification efforts have failed, and the juvenile court has before it a proposed permanent plan of adoption, it is the caretaker who has preference. (*Id.* at pp. 285-286; *In re Lauren R.* (2007) 148 Cal.App.4th 841, 855-856.) Although DHHS now argues relative preference was not the basis for the court's decision, the record is clear that DHHS relied on the relative preference to ask the court to change the minor's placement. As we have described, this was the *only* basis articulated by any of the parties at the hearing. However, as we explain *post*, we need not rely on the applicability of either preference to decide abuse of discretion here.

11

A juvenile court's decision to authorize a change in the minor's placement is reviewed for abuse of discretion.  (See *In re N.M.* (2011) 197 Cal.App.4th 159, 171.)  But we must also review the juvenile court's finding that the change is in the minor's best interests to determine whether there is substantial evidence in the record to support it.  (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066; *Stack v. Stack* (1961) 189 Cal.App.2d 357, 368 [if there were *no* evidence to support the decision, there would be an abuse of discretion].)

In the written form order, the court checked the box indicating its placement order was in the minor's best interests, and DHHS argues in its briefing that the aunt was an otherwise appropriate placement.  The suitability of placement with the aunt is, however, not the issue.  Because appellant was a current caretaker who met the threshold requirements of a prospective adoptive parent, and the removal order was made at the termination hearing, the issue is whether removal from appellant's home was in the minor's best interests.  Although couched as a placement order, it was necessarily a removal order.  There was no evidence in the record from which to conclude that *removal* from the only home she had ever known was in the minor's best interest.  (See *T.W. v. Superior Court, supra,* 203 Cal.App.4th at p. 45 [discussing the difference between placement and removal].)

Here, the evidence established that *both* appellant and the aunt were appropriate as caregivers.  At the hearing, DHHS conceded that "either placement would be appropriate."  There was, however, *no* evidence that removing the minor from appellant's home was in the minor's best interests.  The minor had been living with appellant for nearly all of her life; comparatively, the minor had visited with the aunt on a monthly basis for six months and there was some evidence of recent overnight visits.  There was absolutely no consideration of the impact of removal on the minor, despite evidence that the minor was showing stranger anxiety and looked to appellant to meet her needs.  In sum, there was simply no evidence to support the juvenile court's finding that removal

12

from appellant was in the minor's best interests.  Accordingly, the court's placement order, which operated as an order removing the minor from appellant's care, was an abuse of its discretion.

## DISPOSITION

The change of placement order of the juvenile court is vacated.  The matter is remanded to the juvenile court where DHHS is ordered to provide appellant with notice and the opportunity to object to the minor's removal and seek designation as a prospective adoptive parent and a hearing pursuant to section 366.26, subdivision (n)(3)(A)-(D).  Notice is to be provided within 10 days of the filing of our remittitur.  The hearing, if requested, shall be held within 40 days of the filing of our remittitur.  At the hearing, DHHS has the burden to prove by a preponderance of the evidence that removal from appellant is in the minor's best interests, based on the state of the evidence at the time of the hearing.  The juvenile court shall ensure that the minor is in an appropriate placement pending the hearing.


                   DUARTE   , J.


We concur:


  NICHOLSON  , Acting P. J.


  MAURO   , J.


13

Filed 3/11/15 (received for posting 3/12/15)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | C075687 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD232884)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

1

The opinion in the above-entitled matter filed on February 9, 2015, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

FOR THE COURT:

_____NICHOLSON_____, Acting P. J.


_____MAURO_____, J.


_____DUARTE_____, J.

2

## EDITORIAL LISTING

APPEAL from orders of the Superior Court of Sacramento County, Donna M. Petre and Jerilyn L. Borack, Judges. Vacated and remanded with directions.

Nixon Peabody, Karl D. Belgum and Blaire Z. Stokes, for Defendant and Appellant.

John F. Whisenhunt, County Counsel, Claire Van Dam, Deputy County Counsel, for Plaintiff and Respondent.