Filed 5/26/21  In re C.C. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re C.C., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES AND WENDY C.,<br><br>Objectors and Appellants. | D078291<br><br>(Super. Ct. No. J519821) |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, III, Judge.  Affirmed.

Gary S. Plavnick, under appointment by the Court of Appeal, for Objectors and Appellants.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

This is an appeal from an order of the juvenile court denying a petition to change, modify, or set aside an order of the court previously made regarding issues of placement of the detained minor, C.C. (Minor). (Welf. & Inst. Code, § 388; further unidentified statutory references are to this code.) The petitioners in the juvenile court, Charles and Wendy C., are the appellants (Appellants) here. At the time of the petition, Appellants were the Minor's caretakers and court-approved de facto parents. The denial of their petition left in effect a general placement order of the juvenile court that would allow the San Diego County Health and Human Services Agency (Agency) to place the Minor in a licensed resource home and/or relative's home at the Agency's discretion.

On appeal, Appellants contend that the juvenile court abused its discretion in denying their petition. More specifically, they contend that the court's findings regarding the best interests of the Minor are not supported by substantial evidence. They further contend that, by ordering a transfer of the Minor's placement to certain maternal relatives, the court misapplied the relative placement preference under section 361.3. As we explain, by ruling that Appellants did not meet their burden under section 388, the court did not abuse its discretion in denying Appellants' petition. As we further explain, contrary to the premise of Appellants' presentation on appeal, in denying Appellants' section 388 petition, the court did not order the removal of the Minor from the placement with Appellants or a new placement for the Minor. Thus, with the knowledge that the Agency was recommending a transfer of the care to the maternal relatives, the court merely acknowledged the effect of leaving the Minor's placement to the Agency's discretion.

Accordingly, Appellants did not meet their burden of establishing reversible error, and on this basis we will affirm the order denying their section 388 petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The Minor, born in July 2018, is the daughter of C.P. (Mother).[2]  The Minor tested positive for amphetamine and methamphetamine at birth, at which time the Agency detained her and filed a section 300, subdivision (b)(1) petition for her protection.  (See *In re Monique T.* (1992) 2 Cal.App.4th 1372, 1378 [being "born with dangerous drugs in her body . . . creates a legal presumption that she is a person described by" § 300, subd. (b)(1)].)

In preparation for the detention hearing, the Agency prepared and submitted to the court an August 2018 report which disclosed, in relevant part, that Mother did not provide the names or contact information for any relatives.  At the August 2018 detention hearing, the juvenile court made a prima facie finding that the Minor was a person described by section 300, subdivision (b)(1), ordered that she be detained in out-of-home care, limited Mother to supervised visits, and directed Mother not to breast feed without medical authorization.  As relevant to the issue in the present appeal, the court expressly found that "there may be relatives available who [are] able and willing to care for the child" and ordered Mother to disclose to the social

---

[1]    We limit our recitation of the facts to those that are relevant to the issues on appeal, given the standard of review set forth at part II., *post*.

[2]    The birth certificate does not identify the father.  The record on appeal discloses two alleged fathers:  One was excluded from paternity via genetic testing; and the other denied paternity.

worker all "known identifying information of any maternal . . . relatives of the child."

In preparation for the jurisdictional and dispositional hearing, the Agency prepared and submitted to the court a written report. It advised that the Minor was being detained in a confidential licensed resource home[3] and recommended that: the court make a true finding on the section 300, subdivision (b)(1) petition; the Minor be placed in a licensed resource home; the Minor's custody be removed from Mother; Mother be provided reunification services; and Mother receive supervised visitation with the Minor. The report further disclosed that Mother had enrolled in an intensive substance abuse outpatient program and had progressed nicely: She drug tested with negative results, attended treatment sessions in the program, and participated in Narcotics Anonymous and Alcoholics Anonymous meetings outside the program.

As particularly relevant to this appeal, the jurisdictional and dispositional report also disclosed that Devin V., Mother's sister (Maternal Aunt), had contacted the Agency in mid-August 2018, less than a week after the Minor's detention. In a conversation *on August 13, 2018*—which was less than a week after the detention hearing and a little more than two weeks before the initial jurisdictional and dispositional hearing—the Maternal Aunt explained to the Agency that she lived in Idaho and that when Mother found out she was pregnant, Mother moved to Idaho to live with the Maternal Aunt

---

3    Effective January 1, 2017, the Legislature replaced the former system of "certifying foster homes" with a new system of "approv[ing] resource families." (Legis. Counsel's Dig., Assem. Bill No. 403 (2015-2016 Reg. Sess.), Stats. 2015, ch. 773, § 111; see § 16519.5, subds. (a), (c)(5), (q); see generally § 16519.5 et seq.)

in order to get away from methamphetamine use and an abusive boyfriend who was dealing methamphetamine. The Maternal Aunt further explained that she was contacting the Agency because the Maternal Aunt had not heard from the Mother in more than two months, since June 2018. The Maternal Aunt was concerned that, due to the Mother's continued drug use, the Mother might try to conceal the birth of her baby. Otherwise, the Maternal Aunt expressed "worr[y]" that "the baby was going to be born on drugs and . . . taken" by the authorities.

In a telephone call approximately 11 days later, the Maternal Aunt provided the Agency with some of the Mother's family background. For example, their mother had physically and emotionally abused Mother, and their father and uncle had molested her. In addition, according to the Maternal Aunt, the Mother was "an addict," could be "very manipulative," and had serious "mental health" issues.

By the time of the October 2018 contested jurisdictional and dispositional hearing, the Mother was receiving unsupervised visits with the Minor. Nonetheless, at the October 2018 hearing, the juvenile court found the petition true, declared the Minor to be a dependent of the juvenile court under the Agency's supervision, removed custody of the Minor from the Mother, and ordered reunification services for the Mother. The court confirmed the Minor's (confidential) placement in a licensed resource home.

Two weeks later, pursuant to the Interstate Compact on the Placement of Children (ICPC),[4] the Agency requested a home study for the Maternal Aunt in Idaho.

---

[4] "The ICPC is a compact among California and other states, the purpose of which is ' "to facilitate the cooperation between states in the placement and monitoring of dependent children." ' " (*In re Suhey G.* (2013) 221 Cal.App.4th

At the end of the following month, November 2018, the Mother tested positive for methamphetamine.

During December 2018, because the Minor was "not gaining adequate weight," the Agency became "concern[ed]" that the Minor was "not being fed enough." Later that month, as part of a medical exam at the emergency department of the pediatric hospital, the Minor "was found to have a parietal skull fracture . . . and a 9th posterior rib fracture" that the attending child abuse expert determined to be "non-accidental." That same day, the Agency removed the Minor from the care of the resource parents, placing her temporarily at the Polinsky Children's Center. The following week, the Agency placed the Minor in a new resource home.

In preparation for the section 366.21 six-month review hearing in early April 2019, the court received reports from the Agency and the Minor's court-appointed special advocate. In the new placement, "all of [the Minor's] needs [we]re being met": She was "doing well in the [new] home" and "appeared to be bonded and responsive to the resource parent." The Mother attended unsupervised visits, and the Minor was always happy to see her. The Mother successfully completed her drug treatment program, tested negative at all times since the November 2018 incident, and transitioned to aftercare. She also completed a parenting class, maintained two jobs, found a place to live, purchased a car, and had a support network.

Meanwhile, in February 2019, the Maternal Aunt participated (with the Mother, Agency representatives, counselors, and one of the resource parents) in a child and family team meeting for the Minor. In March 2019, in

732, 742.) In California, the ICPC can be found at Family Code section 7901. The version in effect at the time of the Agency's actions in this case can be found at Statutes 2014, chapter 144, section 13 (eff. Jan. 1, 2015).

response to the Agency's October 2018 ICPC request, the Agency received "a preliminary relative home study" for the Maternal Aunt from the Idaho ICPC worker. Prior to the six-month review hearing, the Agency advised the court that, if the Mother is unable to reunify with the Minor, the Mother "would like placement with [the Maternal Aunt] once the ICPC is approved."

A little over a week after the six-month review hearing in April 2019, the Maternal Aunt's home in Idaho was approved for the Minor's placement. Nonetheless, at the review hearing, the juvenile court found that, because the extent of Mother's progress "ha[d] been substantial," there was a "substantial probability" that the Minor would be returned to the Mother's custody. Accordingly, rather than pursue the ICPC placement, the court ordered additional reunification services for the Mother and authorized overnight visitation for a trial period.

Toward the end of May 2019, the Mother and the Maternal Aunt attended another child and family team meeting—this time to discuss reunification. The drug counselor reported that the Mother "had made 'incredible progress[,]' met all her goals, and was in compliance with [the] treatment program." Following this meeting and the court's order at the six-month review hearing, on June 1, 2019, the Mother started a 60-day overnight trial visit with the Minor.

However, the Mother tested positive for methamphetamine on June 27, 2019; and on July 8, 2019, she was discharged from the recovery services program she had been attending. By the end of July 2019, the Mother failed to pass at least four drug tests: She did not show for one; she presented a diluted specimen at another; and she tested positive for methamphetamine at two. Accordingly, the Agency terminated the overnight visitation, picked up the Minor, placed the Minor with a new resource family, and petitioned the

7

court for an order that the Mother's visitation revert to supervised daytime visits.

Appellants were the new resource family, and they received the Minor on July 30, 2019. On August 13, 2019—i.e., within the first two weeks of this placement—the Agency expressly advised Appellants *both* that the Maternal Aunt had previously requested the Minor's placement *and* that the Agency was in the process of updating the ICPC request in support of a placement with the Maternal Aunt in Idaho.

In mid-August 2019, at an expedited hearing on the Agency's request for an order, the juvenile court considered the prima facie showing, found that the best interests of the Minor required a change in the visitation order, and ruled that the Mother could have supervised visitation pending an evidentiary hearing. At the conclusion of the contested evidentiary hearing in early October 2019, the court granted the Agency's petition—finding that the changed circumstances and Minor's best interests required that Mother's visitation of Minor be "reverted to supervised"—and confirmed the date the following week for the section 366.21 12-month review hearing.

The day before the 12-month review hearing, the Maternal Aunt contacted the Agency. The Mother had just informed her that the Agency was recommending a termination of services. The Maternal Aunt was "upset that her niece would potentially be 'adopted out' to foster parents" and "unhappy with the Agency and the decision to place [the Minor] back with [the Mother]." The Maternal Aunt stated that she "wanted custody of [the Minor] and would do whatever it took to have [the Minor] placed with her in Idaho."

At the initial 12-month review hearing in October 2019, the Agency recommended termination of reunification services. Mother opposed the

8

Agency's recommendation, and requested a trial on the issues of termination of services and the potential placement of the Minor with the Maternal Aunt. The Mother indicated that she had the proper contact information for the Maternal Aunt, and the Agency indicated that, since the prior ICPC request had expired, the Agency would initiate a new one. The court set November 2019 dates for a pretrial status conference and the contested 12-month review hearing.

Approximately a month later, the Agency received documentation that the ICPC request had been received in Idaho. Less than a week later—i.e., at a time when Appellants had been caring for the Minor for three and a half months—the Agency discussed with Appellants the potential placement of the Minor "with maternal relatives." Appellants "did not agree," objecting to a placement with a person the Minor had never met and questioning why the maternal relatives had not reached out earlier. Appellants indicated that they wanted to adopt the Minor and that they possibly would be filing for status as de facto parents.

At the contested 12-month review hearing in late November 2019, the juvenile court terminated the Mother's reunification services and set a March 2020 date for the section 366.26 selection and implementation hearing ("section 366.26 hearing").[5] The Agency reported that it had resubmitted the ICPC request, and that the Mother and the Minor each requested—and that

---

[5] The basis of the court's ruling was the Mother's continued drug use. Speaking directly to the Mother, the court complimented her on her short-term successes with sobriety and explained: If, during the four months until the section 366.26 hearing, "you have a good period of time where you can show the court and the Agency that you're going to remain sober," then "I think you may have a chance of reunifying with your child eventually."

the Agency agreed to provide—ongoing notice of both the status of the ICPC request and the decision whether the Minor was going to be moved.

In mid-December 2019, the Maternal Aunt and her husband moved to Kansas, because he had been hired for a six- to 12-month job. The Maternal Aunt again indicated that she wanted the Minor placed with her, expressly requesting that the Agency submit an ICPC request to Kansas for placement with her in Kansas. A week or so later, the Agency arranged video visits between the maternal relatives and the Minor; and by the beginning of 2020, Appellants agreed to facilitate weekly video visits.[6] Prior to the first video visit, Appellants continued to "express concern" about the possible placement of the Minor with the Maternal Aunt, since the Maternal Aunt and her family were " 'strangers' to [the Minor]" who failed to reach out earlier in the case. More specifically, Appellants were "concerned with [the Maternal Aunt's] intentions and effort in engaging in a relationship with [the Minor]."

Days after the first video visit in early January 2020, the Agency submitted, and the juvenile court approved, a request for an expedited ICPC evaluation of the Maternal Aunt's home in Kansas.

About a week later, the Mother again told the Agency that she wanted the Minor placed with the Maternal Aunt.

During the first week of February 2020, Appellants submitted, and the juvenile court granted, a request for de facto parent status.

---

[6] Between December 20, 2019 and November 6, 2020, the Maternal Aunt and her family failed to participate in 34 of the 84 visits that they and Appellants had prearranged. More specifically, during the April 27 – June 17, 2020, time period, neither the Maternal Aunt nor her family participated in any of the scheduled visits.

Later that month, the Maternal Aunt contacted the Agency to request in-person visits with the Minor, and by the end of the first week in March 2020, the Maternal Aunt had attended approximately five such visits. During and after one of these visits, the Maternal Aunt reaffirmed to the Agency her family's commitment to adopting the Minor, including protecting the Minor from the Mother if necessary; and Appellants reaffirmed to the Agency their concern over the Maternal Aunt's intentions. At a child and family team meeting in between the Maternal Aunt's visits, the Maternal Aunt and Appellants repeated both their respective desires to adopt the Minor and their respective concerns with how the dependency proceedings had progressed. At this meeting, the Maternal Aunt disclosed her family's intent to return to Idaho and expressed her worry that the move would prolong the placement process. Following the five in-person visits, the Agency's social worker who had observed the visits reported about them in detail, concluding that each was positive. In the same report, the social worker commented that, in more than 40 of the video visits, the Maternal Aunt's husband and their child (i.e., the Minor's uncle and cousin, respectively) participated and that the Minor recognized and engaged freely with all three of them.

In preparation for the initial section 366.26 hearing, the Agency submitted a report and an addendum. In both, the Agency recommended a 60-day continuance for the Agency to determine the most appropriate permanent placement plan for the Minor. At the initial March 2020 hearing, on its own motion, the juvenile court continued the section 366.26 hearing until mid-July 2020, pursuant to the COVID-19 pandemic and related emergency or general orders.

11

By late April 2020, the Maternal Aunt had returned to Idaho, and at the Agency's request the court had ordered an expedited ICPC evaluation of the Maternal Aunt's home. By the time of the continued section 366.26 hearing in mid-July 2020, Idaho had delivered the preliminary home study to the Agency, and the Maternal Aunt and her family had completed their ICPC home study evaluation.

Between May and mid-July 2020, Appellants reported to the Agency their concern over the number of times the Maternal Aunt (and family) missed scheduled virtual visits with the Minor—including having no contact between May 2 and June 17. (See fn. 6, *ante*.) The Agency followed up with both the Maternal Aunt's family and Appellants. The Maternal Aunt's family members told the Agency the reasons they were unable to participate in the video visits.[7] Appellants told the Agency about: their "multiple 'concerns' with the [Mother's] relatives"—including, but not limited to, the belief that "the maternal relatives were 'liars' and had not been 'upfront' about certain information"; and their feelings that the assigned social worker " 'does not care' and just says, 'Thanks for the information.' " In June 2020, Appellants complained to the Agency that the maternal relatives had been joining the Mother (who had relocated to Idaho but was not living with them) in her video visits with the Minor.

Approximately a week before the continued section 366.26 hearing in mid-July 2020, the Agency submitted an addendum report in which it attached copies of notices of the section 366.26 hearing (on selection of a

---

[7]     These reasons included the move back to Idaho, a confidential medical condition, and the difficulties in getting telephone and internet service in the remote part of Idaho where they lived.

permanent placement plan) and proofs of service, re-noticing the parties that the Agency was recommending termination of parental rights and implementation of a plan of adoption. Two days later, the Agency filed an additional addendum report, recommending a 60-day continuance of the section 366.26 hearing "to determine the most appropriate permanent plan and placement for [the Minor]," explaining that "the ICPC for Idaho continues to assess the [M]aternal [A]unt for placement." At the continued section 366.26 hearing, the Agency requested another 60-day continuance; and over an objection by Appellants, the court continued the hearing until mid-September 2020.

Approximately a month later, in mid-August 2020, Appellants filed a section 388 petition to change or modify the court's general placement order.[8] More specifically, Appellants sought a full hearing on the issue of the Minor's placement, requesting (instead of the general placement) an order for a specific placement with them. In part, the petition alleged:

> "[Appellants] are informed and believe that the Court made a general placement order which would allow for the Minor to be placed in a foster home and/or relative home at the discretion of the [Agency]. This order would allow for the [M]inor to be moved by the Agency to the home of a relative without a Court hearing."

> "[Appellants'] attorney was informed that the ICPC of the [M]aternal [A]unt and uncle has been approved and that the Agency is undertaking an analysis to determine the

---

[8] Section 388 provides in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made[.]" (§ 388, subd. (a)(1).)

13

appropriate placement of the [M]inor as between the home of the relatives or [Appellants].”

“That [Appellants] be granted a full hearing on the issue of placement and that the [M]inor not be moved from the home of [Appellants] . . . until the issue of placement, as between [Appellants] and the maternal relatives, can be fully heard by this Court.”

In support of their petition, Appellants argued that the Minor's best interests would be served by the continued placement with Appellants. Factually, Appellants explained:  During the first year of her life, the Minor had multiple placements prior to being placed with Appellants; Appellants were “the only parental figures that [the Minor] has ever known”; and the Minor has developed a sibling relationship with the other child in Appellants' household.  Legally, Appellants contended:  Although section 361.3 gives preferential consideration to a relative who requests placement of a child removed from parental custody, the preference applies only at the dispositional hearing or thereafter *when a new placement of the child must be made*; and there is no need for a new placement for the Minor in the present case.[9]

In response, the juvenile court issued an order advising the parties that the court would consider Appellants' section 388 petition at the continued section 366.26 hearing in mid-September 2020.  In preparation for the hearing, the Agency submitted two additional addenda to its March 2020 section 366.26 report.  In the first, the Agency recommended that the Minor

_____

[9]    Section 361.3 provides in relevant part:  “In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . .” (§ 361.3, subd. (a).)

14

be placed with the Maternal Aunt and her family in Idaho. In the second, the Agency recommended that the court terminate parental rights and order a permanent plan of adoption for the Minor.

At the September 2020 hearing, the court granted Appellants' request for an evidentiary hearing on their section 388 petition, expressly finding that Appellants had made the requisite prima facie showing. The court denied the Agency's request (with which the Mother and Minor agreed) that the Minor be placed with the Maternal Aunt pending resolution of the section 388 petition and the section 366.26 hearing. The court set dates for a pretrial status conference and a November 2020 contested hearing on the section 366.26 hearing (which necessarily would include Appellants' § 388 petition).

At the November 2020 contested hearing, the parties agreed, and the juvenile court ordered, that they would proceed first with the placement issue raised in Appellants' section 388 petition. At the hearing, Appellants presented testimony from the primary social worker, Appellants' expert, and the de facto mother (one of Appellants). The court admitted into evidence more than a half dozen exhibits, including the Agency's most recent addendum report and Appellants' expert's written report and curriculum vitae. After consideration of the social worker's credentials, the court ruled that it would consider the content of the addendum report as expert opinion evidence. After the direct testimony from Appellants' expert, the court ruled that he was qualified and that his testimony was received as expert opinion evidence.

In summary, Appellants' expert explained about a child's attachment to a parent;[10] how the multiple placements the Minor experienced during her first year of life (the most recent being with Appellants, with whom she had lived for approximately 15 months by the time of the contested hearing at issue) adversely affected her ability to attach; Appellants were meeting the Minor's needs; the Minor had developed a "secure attachment" to each of Appellants; how separation from Appellants (and the other young child in their household) would be traumatic for the Minor, adversely impacting her ability to form personal relationships in the future; biology does not affect attachment; and, importantly, because of the Minor's young age, "an ability to finalize an adoption with [Appellants] outweigh[ed] the risk of taking a chance on a new placement . . . and not finalizing adoption for another year or more by the time she's four or five." Accordingly, the expert opined, it was not in the Minor's best interests to be moved to the Maternal Aunt's home at that time.

The Minor, the Mother, and the Agency all acknowledged that Appellants had provided a warm loving home for the Minor, who was thriving under their care.[11] During closing argument, the Minor, through her guardian ad litem, recognized that she "formed an attachment with

---

10    According to the expert, "Attachment is a neuro biopsychosocial connection from the child to the parent based on meeting the basic dependency needs of the child over the first three, or four, five years of life, and it forms the pattern . . . for all future relationships."

11    Nonetheless, the Agency, the Minor, and the Mother all opposed Appellants' section 388 petition, instead supporting the Agency's recommendation that the Minor be placed with the Maternal Aunt's family in Idaho.

[Appellants]," that "[Appellants have] done a great job raising [her]," and that "if [Appellants] were to adopt her, . . . they would continue to be doing a great job."[12]  Likewise, the Mother "agree[d] the [Minor has] received wonderful care from [Appellants]."  Finally, the Agency acknowledged that "[Appellants] have provided [the Minor] with excellent care" and they "love [her] very much."

Despite the foregoing, legally the Agency focused on section 361.3, subdivision (a)'s requirement that the court give "preferential consideration . . . to a request by a relative of the child for placement of the child with the relative."  The Agency emphasized that the Maternal Aunt requested that the Minor be placed with her as early as August 2018, prior to the jurisdictional and dispositional hearing, and consistently throughout the proceedings.

At the close of argument, the court took the matter under submission and set a further hearing the following week, at which time the court would issue its oral ruling.  At a hearing on November 18, 2020, the court denied Appellants' section 388 petition and ordered the Agency to start the transition process for the Minor's placement with the Maternal Aunt (November 2020 Order).  The court also set a December 2020 date for the section 366.26 hearing.

On November 30, 2020, Appellants filed this appeal from the November 2020 Order.[13]

_____

[12]    Nonetheless, the Minor's guardian ad litem argued, whatever trauma the Minor might suffer from a new placement with the Maternal Aunt would be outweighed by the benefits of being placed with family.

[13]    An order denying a section 388 petition to modify a prior order of the juvenile court is appealable under section 395, subdivision (a)(1).  (*In re K.C.* (2011) 52 Cal.4th 231, 235-236.)

17

## II. DISCUSSION

In the juvenile court, Appellants, as the petitioners in the section 388 proceedings, had the burden of proof. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.) On appeal, we presume the November 2020 Order is correct; and Appellants, as the appealing parties, have the burden of establishing reversible error here. (*In re S.R.* (2020) 48 Cal.App.5th 204, 206, fn. 1.)

We review the denial of a section 388 petition for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*) [§ 388 petition to change placement]; *In re J.C.* (2014) 226 Cal.App.4th 503, 525 [§ 388 petition to change custody and vacate § 366.26 hearing].) Where, as here, the juvenile court exercises its discretion in a dependency proceeding, " ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Stephanie M.*, at p. 318; see *id.* at pp. 318-319 [" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' "].)

### A.

Appellants argue on appeal that the juvenile court erred "when it removed [the Minor] from [Appellants'] care as there was absolutely no showing that removal and/or the change of placement was in her best interests." However, this appeal is not from an order removing the Minor from Appellants' care.

As the juvenile court expressly ruled—which Appellants quote in their opening brief—in denying Appellants' section 388 petition, the court *merely left in place* an "order granting discretion to the Agency to place [the Minor] with [the] Maternal Aunt without further court hearings" and scheduled the continued section 366.26 hearing. The court's general placement order is not

18

before us; our review is limited to the court's November 2020 Order denying the request to change or modify the general placement order.

B.

As Appellants acknowledge in their opening brief, section 361.3 "provides the relatives [of the dependent minor] with only the right to have their home considered as a placement prior to the consideration of non-relative homes." (Quoting § 361.3, subd. (c)(1) [" '[ "]Preferential consideration["] means that the relative seeking placement shall be the first placement to be considered and investigated.' " (Italics omitted.)].) To the extent section 361.3 was at issue, the juvenile court ruled only that the statute applied in this case. The court based this ruling on the finding that "the Maternal Aunt has been present, at least as far as the desire for placement is concerned, and that the ongoing communication, while disrupted at one or two points, is a clear indication of a proper expression of a desire to provide for [the Minor]."[14]

Very simply, by acknowledging the Legislature's statutory directive that "preferential consideration" be given to a relative's request for placement of the minor (§ 361.3, subd. (a)), the juvenile court did not abuse its discretion in denying Appellants' section 388 petition to change or modify the existing

_____

[14] The court's finding of the Maternal Aunt's presence or participation in the proceedings is supported by substantial evidence. At the detention hearing on August 9, 2018, the court found that "there may be relatives available who [are] able and willing to care for the child." In fact, just four days later, the Maternal Aunt contacted the Agency, explaining her concern over the Mother's molestation while growing up, her pregnancy, her drug use, and her recent disappearance. Eleven days after that, the Maternal Aunt again contacted the Agency, this time expressing her concern that, regardless of the Mother's difficulties, the Minor receive what is best for her.

19

order that allowed for the placement of the Minor at the Agency's discretion. Stated differently, the juvenile court's decision to deny Appellants' section 388 petition based on the application of a statute to a factual situation for which the statute was enacted neither exceeded the bounds of reason nor was arbitrary, capricious, or patently absurd.

C.

In their opening brief, Appellants raise only a substantial evidence challenge to the November 2020 Order. They rely on authority for the proposition that, in authorizing a change in a detained minor's placement, substantial evidence must support the finding that the change is in the minor's best interests. (Citing *In re M.M.* (2015) 235 Cal.App.4th 54, 64.) However, our determination whether the juvenile court abused its discretion does not, *in the context of the present appeal*, allow for substantial evidence review. That is because, contrary to Appellants' presentation—and the factual background in *M.M.* (*id.* at p. 56 [order of removal *at the § 366.26 selection and implementation hearing*])—the order on review does not direct either a removal or a change in placement based on the minor's best interests. For this reason, we are unable to, and thus reject Appellants' suggestion that we, conduct a substantial evidence review of "the juvenile court's finding that the change is in the minor's best interests." (Citing *M.M.*, *supra*, 235 Cal.App.4th at p. 64.) Whereas such a finding may be required when the court orders a new placement (*id.* at p. 60 [e.g., § 366.26 hearing]), no such finding is required in a *section 388 proceeding* at which the court *denies* a requested change of an existing placement order.[15]

_____

[15]    Likewise, most of Appellants' other authorities are inapposite, since they involved appellate review of a juvenile court order following proceedings to determine the placement of the minor. (E.g., *Stephanie M.*, *supra*, 7

Here, we are reviewing an order that keeps in place an existing order which *established the Agency's discretion* in the general placement of the Minor. Where, as here, the court's ruling is, in effect, that the parties with the burden of proof did not carry their burden, " 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' " (*In re K.S.* (2016) 244 Cal.App.4th 327, 340 [denial of request for dismissal of a § 388 petition]; compare *ibid*. [consideration of substantial evidence may apply to appellate review of an order *granting* a request to dismiss a § 388 petition].)

Although the juvenile court denied Appellants' request that the general placement order be modified or changed, we recognize that the November 2020 Order provides that "[t]he Agency is to start the transition process for the minor's new placement with [the] maternal aunt and uncle." However, we do not read that provision as *directing* either a removal or a new placement for the Minor. That is because the statement at issue follows both (1) the Agency's recommendation that, at the section 366.26 hearing, the Minor be placed with the Maternal Aunt and her family in Idaho, and (2) the following exchange at the conclusion of the hearing, which left the Minor's placement to the discretion of the Agency and set the section 366.26 hearing:

> "[Appellants' counsel]: If somebody could contact me at the appropriate time with respect to any transition discussion, I would appreciate it, your Honor.

---

Cal.4th 295 [motion for change of placement]; *In re M.H.* (2018) 21 Cal.App.5th 1296 [motion for change of placement]; *In re N.M.* (2011) 197 Cal.App.4th 159 [in declaring minor a dependent of the court, court ordered a placement for minor]; *In re Shirley K.* (2006) 140 Cal.App.4th 65 [court challenge to agency's placement of minor].)

> "The Court: The Agency is directed to begin the process. I want to see that plan as well."

*Read in context*, the court merely acknowledged the Agency's discretion to effect its recommended placement with the Maternal Aunt—pending the continued section 366.26 hearing.

Neither Appellants' section 388 petition nor anything that came up at the contested hearing on the petition called on the court to order a new placement. To the contrary, by setting a date for the continued section 366.26 hearing at the conclusion of Appellants' section 388 hearing, the court essentially ruled that it would consider issues related to the Minor's permanent placement at the continued hearing based on the section 366.26 criteria.

### D.

In their reply brief, Appellants assert that the relative placement preference provided in section 361.3 does not apply in this case, because subdivision (d) limits its application to " 'whenever a new placement of the child must be made' " after the section 358 dispositional hearing. (Quoting § 361.3, subd. (d).)[16]

As an initial consideration, by raising this argument for the first time in their reply brief, Appellants forfeited appellate review of this argument.

---

[16] Section 361.3, subdivision (d) provides in full: "Subsequent to the hearing conducted pursuant to Section 358, *whenever a new placement of the child must be made*, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements. In addition to the factors described in subdivision (a), the county social worker shall consider whether the relative has established and maintained a relationship with the child." (Italics added.)

(*In re Daniel M.* (2003) 110 Cal.App.4th 703, 707, fn. 4 (*Daniel M.*).) In any event, even if we were to reach the merits, the result would be no different.

As Appellants acknowledge, the statutory limitation on which they rely applies, if at all, only when a new placement of the child *must be made*. (Quoting § 361.3, subd. (d).) As we explained *ante*, however, at the time of the hearing on Appellants' section 388 petition, the Minor did not require a new placement, and in fact the November 2020 Order did not effect a new placement.

### E.

In their reply brief, Appellants also argue that, because of the Maternal Aunt's multiple moves and lack of consistent contact with the Agency, "the maternal relatives gave up their right to assert the relative placement preference set forth in section 361.3." Again, Appellants have forfeited appellate review of this issue, since they failed to raise it until their reply brief. (*Daniel M.*, *supra*, 110 Cal.App.4th at p. 707, fn. 4.) In addition, Appellants forfeited appellate review of the issue by not raising it, in the first instance, in the juvenile court during the section 388 proceedings. (*In re Samantha H.* (2020) 49 Cal.App.5th 410, 413.)

To the extent Appellants contend that their objections in the juvenile court regarding the Maternal Aunt's inconsistency in visitation preserved the issue of waiver on appeal, the juvenile court impliedly rejected a finding of waiver of section 361.3's relative placement preference. In its oral ruling on Appellants' section 388 petition, the court noted that, although "the missing visits [wa]s an issue," such evidence was *not* an "indicat[ion] that the [maternal] relatives lack[ed] the ability to provide permanency or stability and continuity or security or love or anything of that nature or to overcome past, present, or future trauma." (See also fn. 14 and related text, *ante*

23

[Maternal Aunt's participation in the proceedings "is a clear indication of a proper expression of a desire to provide for [the Minor]"].)

F.

Based on our review of the entire record, we have found no reason to question or dispute the following statement from the juvenile court's oral ruling denying Appellants' section 388 petition: "All parties agree that the home of [Appellants] is a healthy environment. The evidence is clear that [the Minor] is thriving in that environment and has . . . created a secure and long-lasting attachment." Thus, our ruling today no doubt adds further disappointment to Appellants, who have done nothing wrong; to the contrary, based on the record in this appeal, they have succeeded in providing everything that is asked of resource parents.

Nonetheless, as we have explained, given the scope of the section 388 petition and the lack of a court-ordered change in placement, Appellants' provision of care to the Minor is not at issue. The standards the juvenile court and this court are to apply have been established by the Legislature; and the job of the courts is to apply the law as written, not to come up with the least disappointing ruling.[17]

---

[17] The rulings in this opinion are limited to this appeal from the November 2020 Order and to the proceedings on Appellants' section 388 petition that resulted in the order. Nothing in this opinion is intended to express a view as to the outcome of any future juvenile court proceedings in which the removal of, or a new placement for, the Minor is at issue.

## III. DISPOSITION

The November 2020 Order is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.