[No. D061609. Fourth Dist., Div. One. Aug. 21, 2012.]

R.H. et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

## COUNSEL

Terence M. Chucas, under appointment by the Court of Appeal, for Petitioner R.H.

Leslie A. Barry, under appointment by the Court of Appeal, for Petitioner D.H.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Real Party in Interest.

Joshua Bourne, under appointment by the Court of Appeal, for Minor.

## OPINION

**HALLER, J.**—R.H. and Darnell H., who had been designated as de facto parents and prospective adoptive parents for their granddaughter, L.S., seek writ review of juvenile court orders removing L.S. from their home under Welfare and Institutions Code section 366.26, subdivision (n).[1] Darnell

---

[1] All further statutory references are to the Welfare and Institutions Code.

contends he was denied due process because the juvenile court denied his and R.H.'s requests for appointed counsel in the underlying proceedings concerning L.S. R.H., who was represented by retained counsel, joins in Darnell's contentions.[2] We deny the petitions and deny the request for a stay of the proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of infant L.S. under section 300, subdivision (b) on the basis of her mother Terra S.'s substance abuse. Terra's two older children, L.M. and T.S., were living with R.H. and Darnell, their maternal grandparents. R.H. and Darnell's eight-year-old son, Marquis, also lived in the home. The court ordered L.S. detained and ordered the Agency to assess R.H. and Darnell for placement.

At a hearing in April 2009, the court found the allegations of the petition true, declared L.S. a dependent child of the court and ordered reunification services for Terra. It ordered L.S. placed in foster care. The Agency requested discretion to place L.S. with R.H. and Darnell upon a positive evaluation of their home. The Agency was continuing to assess R.H. and Darnell's home for placement of L.S. because there had been prior referrals to child welfare services regarding allegations of sexual abuse of Terra when she was a child, including abuse by the individual who fathered L.M. when Terra was 12 years old. The results of these referrals were unknown. None of the allegations of sexual abuse concerned Darnell.

On April 10, 2009, L.S. was placed with R.H. and Darnell, where she lived with L.M., T.S. and Marquis. In May, the Agency reported it had discovered that Darnell had been convicted of robbery in 1983 and 1989, and, because of that fact, the Agency could not approve the home for adoption or guardianship, but L.S. could remain there under a plan of long-term foster care.

Terra did not reunify with L.S., and, on October 6, 2009, the court terminated her reunification services and set a section 366.26 hearing.

The four children continued to live with R.H. and Darnell. On June 22, 2010, the court granted R.H. and Darnell's request to be designated L.S.'s de facto parents.

In September 2010, the Agency filed a supplemental petition under section 387, alleging R.H. and Darnell's home had been approved in error as

---

[2] R.H. and Darnell were represented by appointed counsel in a related petition and hearing involving their son, Marquis H.

placement for L.S. since under federal law, L.S. could not be placed there because of Darnell's criminal history. The Agency reported Darnell was attempting to obtain a certificate of rehabilitation in order to gain an exemption and it was believed the case would be addressed in December. The court dismissed the petition, finding it was in L.S.'s best interests to remain in R.H. and Darnell's home.

In December 2010, the criminal court granted Darnell's petition for a certificate of rehabilitation, and, in March, his and R.H.'s home assessment was approved. After several continuances, the section 366.26 hearing concerning L.S. was held on April 19, 2011. The court terminated Terra's parental rights, ordered adoption as the permanent plan for L.S. and granted R.H. and Darnell's request to be designated her prospective adoptive parents.

Approximately five months later, L.M., T.S., Marquis and L.S. were taken into protective custody based on allegations that 13-year-old L.M. had been repeatedly subjected to physical abuse in the home.

It was reported that R.H. had struck L.M. in the face for not doing chores, and in the past L.M. had been hit with a crutch, a closed fist, an extension cord and burned with a clothes iron. L.M.'s eye was swollen and purple, and she had several scars and scabs on her body and a burn mark on her arm. The child abuse expert at Polinsky Children's Center said the injuries were the result of repeated severe, long-standing physical abuse. L.M. also said Marquis had hit her numerous times in her face with a plastic bat while R.H. watched. In addition, T.S. had marks indicating physical abuse, including signs that he had been hit with a looped object, such as a cord. R.H. and Darnell denied perpetrating the abuse and opposed the removals. In December 2011, T.S. disclosed that both R.H. and Darnell had physically abused him before he was removed from their care.

On September 8, 2011, the court conducted hearings on T.S.'s, Marquis's and L.S.'s removal from R.H. and Darnell. The hearing regarding L.S. was held under section 366.26, subdivision (n) because R.H. and Darnell had been designated her prospective adoptive parents. The court appointed counsel to represent R.H. and Darnell with respect to the petition involving Marquis. R.H. and Darnell requested they also have counsel to represent them regarding the removal of L.S. since they were her prospective adoptive parents. The court denied the request after learning from the attorneys appointed to represent R.H. and Darnell in Marquis's case that it was the policy of Dependency Legal Group of San Diego that they could not provide representation as to L.S.'s removal under section 366.26, subdivision (n). The court advised R.H. and Darnell that they had the right to a hearing concerning L.S.'s removal within

five court days or seven calendar days, and the right to cross-examine witnesses, to present witnesses, to testify or refuse to testify and to retain counsel.

After Darnell conferred with counsel appointed for him in Marquis's case, he and R.H. requested that the four children's cases be heard simultaneously, and the court set a further hearing to select hearing dates. On October 4, 2011, R.H. retained counsel to represent her at the section 366.26, subdivision (n) hearing. Darnell did not.

At the hearing in February and March 2012, which took place over several days, the court considered extensive testimony, other evidence and argument concerning the petitions filed on behalf of each of the children. It found the petitions concerning L.M., T.S. and Marquis to be true by clear and convincing evidence and assumed jurisdiction. The court found R.H. and Darnell had committed extreme abuse on L.M. and T.S. over an extended period of time and that this abuse placed Marquis at risk of harm. Appointed counsel represented Darnell at these proceedings with regard to issues concerning Marquis, and retained counsel represented R.H.

The next day, at the hearing on the section 366.26, subdivision (n) petition on behalf of L.S., the court received evidence from the hearing concerning the other children that had just concluded and heard testimony from the social worker and further argument. It found the allegations of the section 366.26, subdivision (n) petition regarding L.S. to be true, removed her from her prospective adoptive placement with R.H. and Darnell and terminated their status as de facto parents. Retained counsel represented R.H. at this hearing. Darnell represented himself.

R.H. and Darnell petitioned for review of the court's orders. (§ 366.28; Cal. Rules of Court, rule 8.456.)[3] This court issued an order to show cause, the Agency responded and the parties requested oral argument.

## DISCUSSION

Darnell contends that as a de facto parent and a prospective adoptive parent he was denied due process of law when the court denied his request for appointment of counsel at the hearing concerning L.S. R.H. joins and adopts his arguments.

We apply a de novo standard of review to the issue of whether a designated prospective adoptive parent has a due process right to appointment

---

[3] All further rule references are to the California Rules of Court.

of counsel at a hearing to remove a child from his or her home under section 366.26, subdivision (n). Questions of law that do not involve resolution of disputed facts are subject to de novo review, giving no deference to the superior court's ruling. (*Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 486 [83 Cal.Rptr.2d 777].) We apply the abuse of discretion standard in evaluating whether the court erred in failing to appoint counsel for R.H. and Darnell in their status as de facto parents. (*In re Joel H.* (1993) 19 Cal.App.4th 1185, 1199 [23 Cal.Rptr.2d 878]; rule 5.534(e).)

■  A parent possesses a fundamental liberty interest in the care, custody and companionship of his or her child. (*Stanley v. Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 92 S.Ct. 1208].) The United States Supreme Court has held that the liberty interest in "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel v. Granville* (2000) 530 U.S. 57, 66 [147 L.Ed.2d 49, 120 S.Ct. 2054.) "Our society does recognize an 'essential' and 'basic' presumptive right to retain the care, custody, management, and companionship of *one's own child*, free of intervention by the government." (*In re Kieshia E.* (1993) 6 Cal.4th 68, 762 [3 Cal.Rptr.2d 775, 859 P.2d 1290].) The parents' right to raise their children "is a compelling one, ranked among the most basic of civil rights." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Thus, parents are entitled to a full complement of rights in dependency proceedings, including standing, appointment of counsel and reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448, 451 [24 Cal.Rptr.2d 751, 862 P.2d 751]; *In re Sarah C.* (1992) 8 Cal.App.4th 964, 971–972 [11 Cal.Rptr.2d 414].)

■  De facto parents are not entitled to the same rights as parents, but have limited rights in dependency proceedings. (*In re Kieshia E., supra,* 6 Cal.4th at p. 77; *In re Leticia S.* (2001) 92 Cal.App.4th 378, 381 [111 Cal.Rptr.2d 810].) The concept of a de facto parent was judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed on a day-to-day basis the role of a parent, fulfilling the child's physical and psychological needs for a substantial period of time. (*In re Kieshia E., supra,* 6 Cal.4th at pp. 70–71; rule 5.502(10).) In determining whether a person is a de facto parent, the court considers factors such as whether the child is psychologically bonded to the adult; whether the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time and possesses information about the child that is unique from other participants in the process; whether the adult has regularly attended juvenile court hearings; and whether a future proceeding may result in an order permanently foreclosing any further contact with

the adult. (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 66–67 [11 Cal.Rptr.2d 631]; *In re Ashley P.* (1998) 62 Cal.App.4th 23, 27 [72 Cal.Rptr.2d 383].)

" '[T]hose who attain the status of de facto parenthood "are not equated with . . . parents or guardians for purposes of dependency proceedings and standing to participate does not give them all of the rights and preferences accorded [parents or guardians]. [Citations.]" ' " (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 508 [27 Cal.Rptr.3d 157].) Although a de facto parent may over time gain substantial interests in the care, custody and companionship of a child, it is well understood that " 'parent,' " in dependency statutes does not include de facto parents. (*In re Zacharia D., supra,* 6 Cal.4th at p. 448.) A de facto parent is entitled to be present at the hearing, be represented by retained counsel, or, at the discretion of the court, by appointed counsel, and to present evidence. (Rule 5.534(e).)

■ The rights of prospective adoptive parents are akin to those of de facto parents, but are even more circumscribed. The rights of a prospective adoptive parent are statutory and are set out in section 366.26, subdivision (n). Under that provision, at or after a hearing under section 366.26, the court may designate the caretaker of a dependent child as a prospective adoptive parent if the child has lived with the caretaker for six months, and the caretaker has expressed a commitment to adopt the child and has taken at least one step to facilitate the adoption process. (*Id.,* subd. (n)(1).) A change of placement from the home of a prospective adoptive parent may be made only after a noticed hearing in which the court finds removal is in the child's best interests. (*Id.,* subd. (n)(3)(B).) In enacting subdivision (n) of section 366.26, the Legislature provided standing to a designated adoptive parent to petition the court for a hearing on whether the child's best interests would be served by removing the child from the caretaker's home after termination of parental rights and before the petition of adoption has been granted. (*Wayne F. v. Superior Court* (2006) 145 Cal.App.4th 1331, 1337–1338 [52 Cal.Rptr.3d 519].)

■ A designated prospective adoptive parent is entitled to notice prior to a change in placement and may file a petition objecting to a proposal to remove the child. (§ 366.26, subd. (n)(3)(A) & (B).) The child may not be removed unless, after a hearing on the change of placement, the court finds that removal is in the child's best interests. (*Id.,* subd. (n)(3)(B).) Subdivision (n)(3)(C) of section 366.26 states the court's determination that a caretaker is a prospective adoptive parent does not make the caretaker a party to the dependency proceedings or confer on the caretaker any standing to object to any other action by the social services agency unless the prospective adoptive parent has also been declared a de facto parent by the court before removal of the child.

Nothing in the language of section 366.26, subdivision (n) or in the legislative history indicates the Legislature intended to provide that, in addition to the rights to receive notice, to object and to participate in the hearing, the prospective adoptive parent also has the right to appointed counsel. If the Legislature had intended to provide to prospective adoptive parents the right to appointed counsel, it could have stated so in the statute. It did not. From this we conclude the Legislature did not intend to extend this right to prospective adoptive parents.[4]

■  Likewise, considerations of fundamental fairness do not show that R.H. and Darnell had a due process right to appointment of counsel for the section 366.26, subdivision (n) hearing. Fundamental fairness requires that counsel be appointed in some circumstances so that those appearing in a dependency hearing have a meaningful opportunity to be heard. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1153 [65 Cal.Rptr.2d 913].) To determine whether appointment of counsel is required, the court must balance three factors: (1) the private interests at stake; (2) the government's interest; and (3) the risk the procedures will lead to an erroneous decision. (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 101 S.Ct. 2153]; *In re Sade C.* (1996) 13 Cal.4th 952, 987 [55 Cal.Rptr.2d 771, 920 P.2d 716].) The court must consider the factual circumstances and the procedural posture of the case. (*Lassiter*, at pp. 32–33.)

■  In weighing these factors, we observe that the private interests of R.H. and Darnell were very low in view of the serious and prolonged physical abuse they committed against L.M. and T.S. in the home. The interests of the government, on the other hand, were high in that there is a strong interest in protecting children who are being abused, neglected or exploited and to ensure the safety, protection and well-being of children who are at risk of that harm. (§ 300.2.) Also, if reunification with the child's parents has been unsuccessful, the government has an interest in ensuring there is no significant delay in providing permanence and stability for the child. (*Daria D. v. Superior Court* (1998) 61 Cal.App.4th 606, 611 [71 Cal.Rptr.2d 668].) The risk of an erroneous decision was particularly low here as R.H. and Darnell were each represented by counsel in Marquis's case and their defense in Marquis's case was virtually identical to their defense regarding L.S. In both cases, R.H. and Darnell claimed they had not abused L.M. or T.S. and thus there was no basis to remove Marquis or L.S. Also, R.H. retained counsel for the removal hearing held on behalf of L.S., and her position was fully aligned with Darnell's position. In addition, Darnell examined the witness at the hearing, and the court allowed him

---

[4] The Legislature having specifically defined the statutory rights it intended to afford prospective adoptive parents, we defer to the Legislature to determine whether to expand those statutory rights.

considerable leeway in forming his questions. Consideration of these factors leads us to conclude that the policy of ensuring fundamental fairness did not require the court to appoint counsel for R.H. and Darnell for the section 366.26, subdivision (n) hearing concerning L.S. There was no due process violation.

Further, even had there been error by the court in not appointing counsel for R.H. and Darnell, the error would be analyzed by considering whether the error was harmless. Error in the process of a dependency proceeding is decided under a harmless error analysis. (*In re James F.* (2008) 42 Cal.4th 901, 918–919 [70 Cal.Rptr.3d 358, 174 P.3d 180].)

As noted, even with the assistance of counsel in the hearing concerning Marquis, the court concluded the allegations of abuse regarding L.M. and T.S. were true. The same conclusions were reached at the hearing regarding L.S.

R.H. and Darnell also have not shown the court abused its discretion by not appointing counsel for them as de facto parents. A reviewing court will not disturb a court's discretionary ruling in a dependency proceeding " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*In re Stephanie M.* (1994) 7 Cal.4th at 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

We first note that R.H. and Darnell did not request appointment of counsel as L.S.'s de facto parents, but requested counsel on the basis of their status as her designated prospective adoptive parents. Moreover, because of the physical abuse Darnell and R.H. committed on L.M. and T.S., they lost their right to be considered L.S.'s de facto parents. In *In re Kieshia E., supra,* 6 Cal.4th at pages 79–80, the California Supreme Court held a nonparent was disqualified from de facto parent status when his abuse led to dependency. In *In re Merrick V.* (2004) 122 Cal.App.4th 235, 257 [19 Cal.Rptr.3d 490], this court held a neglectful caretaker, who otherwise might have qualified as a de facto parent, extinguished her interest in dependency decisions by acting in a way that was fundamentally at odds with a parental role. Here, the court found R.H. and Darnell committed extreme physical abuse on L.M. and T.S. while L.S. was living in the home. Acting in a way that is adverse to the role of a parent, they disqualified themselves from the role of de facto parents, and the court terminated their status as L.S.'s de facto parents. Further, the court knew they both had the benefit of counsel appointed regarding Marquis's case, and that R.H. had retained counsel and the defense in both cases would be the same. The court did not abuse its discretion by not appointing counsel for them for the hearing.

■ Prospective adoptive parents have rights under section 366.26, subdivision (n) to notice and the opportunity to object and to participate in

the hearing, but they have no fundamental liberty interest in the child and no statutory or due process right to appointed counsel at the hearing. Also, R.H. and Darnell did not show there was any unfairness in the proceedings and they have not shown prejudice.

## DISPOSITION

The petitions are denied. The request for a stay is denied.

Huffman, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied August 30, 2012, and the opinion was modified to read as printed above. The petition of petitioner D.H. for review by the Supreme Court was denied November 20, 2012, S205659.