Filed 7/7/21  A.R. v. Superior Court CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| A.R.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Real Party in Interest. | B308017<br><br>(Los Angeles County Super. Ct. No. 19CCJP03619B) |

ORIGINAL PROCEEDING.  Petition for extraordinary writ.  (Cal. Rules of Court, rule 8.454.)  Debra Archuleta, Judge. Petition granted.

Pamela Rae Tripp for Petitioner.

No appearance for Respondent.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Real Party in Interest.

\* \* \* \* \* \* \* \* \* \* \*

A.R. was the prospective adoptive parent of now two-year-old J.B.  She challenges the order removing J.B. from her care, arguing the court abused its discretion and violated her due process rights by not allowing her to participate in the Welfare and Institutions Code section 366.26, subdivision (n) hearing to change J.B.'s placement.  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The Los Angeles County Department of Children and Family Services (Department) argues this appeal must be dismissed, because A.R. did not timely seek writ relief, and the order is not appealable.  We exercise our discretion to treat the appeal as a writ petition and grant the petition, finding the juvenile court abused its discretion when it did not allow A.R. to participate in the hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2019, at just five days old, J.B. was placed with A.R. and her husband (who is not a party to this appeal) after J.B. tested positive for drugs at birth.  From the beginning of the dependency, A.R. told the Department she was willing to adopt J.B. if he did not reunify with his parents.

The Department's August 2019, November 2019, and March 2020 reports stated A.R. was an approved resource parent, J.B. was well cared for by A.R., and the Department had no concerns about his placement.  A.R. was bonded with J.B. and was committed to adopting him.  A.R. was also fostering J.B.'s

2

maternal cousin and intended to maintain contact with J.B.'s biological family.

Parental rights to J.B. were terminated in March 2020. J.B. was thriving in A.R.'s care, and A.R. was designated as J.B.'s prospective adoptive parent by the court.

But on August 13, 2020, the Department filed a JV-323 "Notice of Intent to Remove Child" form, stating it intended to remove J.B. from A.R.'s care. The Department had received a referral in May 2020 concerning another child in A.R.'s care, after the child suffered a bruise and swollen eye while playing unsupervised in A.R.'s yard. The Department also learned J.B. had fractured his arm in December 2019 after falling off a bed, but neither A.R. nor the hospital had reported the injury to the Department. J.B. suffered another serious injury in August 2020, this time a broken femur. The femur fracture occurred when J.B. was out of A.R.'s sight. The Department was concerned that A.R. was not adequately supervising the children in her care.

The JV-323 notice advised that "If you do not agree with the removal, you may request a hearing. To do this you must fill out form JV-325, Objection to Removal, and file it with the court . . . ." (Italics omitted.)

A proof of service confirmed A.R. was personally served with the JV-323 notice on August 13, 2020, and with a JV-325 form, "Objection to Removal," with which A.R. could request a court hearing to object to removal of J.B. A.R. did not file an objection to the removal. The proof of service included only the first page, confirming personal service, but the second and third pages, containing the affirmation of service, do not appear in the record on appeal.

3

On August 18, 2020, J.B.'s counsel filed a JV-325 objection to removal, arguing it would be detrimental to remove J.B. from his only home, where he had lived since he was five days old. Counsel urged that any safety concerns could be easily resolved with a safety plan or services.

J.B.'s counsel also filed ex parte walk on requests for a hearing under section 366.26, subdivision (n). On August 26, 2020, the juvenile court heard the walk on request, and issued a "Do Not Remove" order pending a "full hearing" pursuant to section 366.26, subdivision (n) to determine if "removal is in the child's best interest." (*Id*., subd. (n)(3)(B).) It does not appear that A.R. received notice of this hearing. The court continued the matter to be heard by the judicial officer assigned to the case on September 8, 2020.

The Department filed a last minute information in advance of the hearing, reporting the Department had received a physical abuse and general neglect referral in May 2020 for a six-year-old child residing with A.R., after she was injured while playing unsupervised in the yard. A.R. believed the child was injured while playing with a dresser outside in the yard, but A.R. was not sure how the injury occurred, as the child was not supervised at the time of the injury. A.R. had been told by state licensing authorities it was okay for children to play outside without direct supervision as long as the yard was fenced.

While investigating the May referral, the social worker found A.R.'s home to be cluttered, with a sharp nail file on the floor, and toys and clothes everywhere. There was no clear path to J.B.'s crib because there were so many toys in the bedroom. The lid for the toilet tank was missing in the bathroom, and the six-year-old's room smelled of urine. A.R. explained that her 12-

year-old nephew wets the bed, and he had been staying in the room with the six-year-old. He was staying with her temporarily, and would soon be returning to his caregiver.

A.R. had not reported that J.B. fractured his arm in December 2019. J.B.'s medical records noted that J.B. had fallen off the bed, and the injury was not suspicious for abuse. The fracture was treated with a cast for three weeks. J.B. also suffered a broken femur in August 2020. According to A.R., J.B. ran out of sight, and then she heard him cry. She was not sure how his bone was broken, but suspected that her nephew may have fallen on J.B. The six-year-old reported that J.B. was hurt after he tripped over a hanger. A.R. sought immediate medical attention for the injury.

According to A.R.'s husband, their nephew was rough with the smaller children in the home, picked on them, and was not easily redirected.

During the investigation of the August referral, the home was no longer cluttered, and there was no urine smell. However, roaches were seen in a box of diapers, and on the walls and ceiling of the hallway.

The six-year-old was removed from A.R.'s home on August 24, 2020 based on the May referral.

The Department recommended that J.B. be removed from A.R.'s home over concerns about lack of supervision and the roach infestation.

The September 8 hearing was conducted remotely, with all participants appearing via WebEx. A.R. also attended the hearing via WebEx, without counsel. (A prospective adoptive parent does not have a right to appointed counsel unless and until she has been designated by the court as a de facto parent.

(*R.H. v. Superior Court* (2012) 209 Cal.App.4th 364, 373–374 (*R.H.*).)  A.R. had not been designated J.B.'s de facto parent and was not entitled to appointed counsel at the removal hearing.)

At the hearing, when J.B.'s counsel made her appearance, she stated for the record that J.B.'s "current caretaker, [A.R.]" was "present on the phone."  The juvenile court then received and admitted exhibits from the child's counsel and the Department. The court invited the Department to make its argument, and later asked J.B.'s counsel to make her argument.  After J.B.'s counsel submitted, the court did not acknowledge or address A.R., or invite her to address the court.  Instead, the court proceeded to make its findings, stated its concern that A.R. was neglectful and was not adequately supervising J.B., and that "removal is the only way I can protect this child."

The child's counsel interrupted the court, but the court interjected, stating it was making its finding that it was in the best interest of J.B. to be removed.  A.R. then interrupted, stating, "Please.  Please."  The court told A.R. to "mute" her phone "or I am going to remove you from these proceedings.  You can talk to your lawyer when I'm done."  The court allowed the child's counsel to briefly address the court, after which the court confirmed its finding that J.B. was to be removed from A.R.'s home.

On September 17, 2020, A.R. filed a belated notice of intention to file a petition for extraordinary writ pursuant to rule 8.454 of the California Rules of Court challenging the order. The notice of intent was deemed a notice of appeal by this court, and briefing proceeded accordingly.

6

# DISCUSSION

## 1.    Introduction

Section 366.26 generally provides for a hearing to determine whether parental rights to a dependent child should be terminated.  Section 366.26, subdivision (n) provides that "at or after a hearing is held under section 366.26, the juvenile court may, if specified conditions are met, designate the child's caretaker as a 'prospective adoptive parent'. . . .  [¶] Subdivision (n) further provides that a [prospective adoptive parent] must be given notice and an opportunity to object to any decision by a social services agency to remove a child from [their] home.  The [prospective adoptive parent] may then object to removal of the child from his or her care.  Upon receiving an objection from a [prospective adoptive parent], the juvenile court must conduct a hearing and determine whether removal of the child from the [prospective adoptive parent's] home is in the best interest of the child." (*Wayne F. v. Superior Court* (2006) 145 Cal.App.4th 1331, 1334 (*Wayne F.*).)

The child or child's counsel may also object to removal, requiring a hearing, or the juvenile court may set a hearing on its own motion.  (§ 366.26, subd. (n)(3)(A) & (B).)  "If a petition objecting to the proposal to remove the child is not filed, and the court, upon its own motion, does not set a hearing, the child may be removed from the home of the designated prospective adoptive parent without a hearing." (*Id.*, subd. (n)(3)(D).)

## 2.    Appealability of Section 366.26, Subdivision (n) Order

The Department argues this appeal should be dismissed, reasoning that a section 366.26, subdivision (n) removal order is not appealable unless appellant first sought writ relief, and that

7

A.R.'s notice of intention to file a writ was filed late. (§§ 366.26, subd. (n)(5), 366.28, subd. (b); see also *A.M. v. Superior Court* (2015) 237 Cal.App.4th 506, 512–515 [discussing appealability of placement orders under § 366.26, subd. (*l*)].)

A.R.'s notice was filed two days late. (Cal. Rules of Court, rule 8.454(e)(4) [notice of intent must be filed within seven days of the placement order].) Our court treated A.R.'s belated notice as a notice of appeal. We find good cause to excuse the late filing of the notice of intent to file a writ petition, and to treat the appeal as writ petition, as this case has been fully briefed, and given the passage of time, it is of little consequence that A.R.'s notice was filed two days late. The interests of justice are better served by addressing the merits of A.R.'s arguments. (*A.M. v. Superior Court*, *supra*, 237 Cal.App.4th at p. 515 ["We have discretion to treat a purported appeal as a petition for writ of mandate."].)

**3.    Notice of Intent to Remove J.B.**

At oral argument, A.R. argued the record does not establish that she received proper notice of the intent to remove J.B., because pages were missing from the proof of service form. This issue was not developed in A.R.'s appellate briefs, and therefore has been waived on appeal. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) And, in any event, the portion of the proof of service that is in the record states that A.R. was personally served, and we see no basis to presume otherwise.

**4.    A Prospective Adoptive Parent's Limited Rights Pursuant to Section 366.26, Subdivision (n)**

A prospective adoptive parent's rights to participate in dependency proceedings are narrowly circumscribed. "The rights of a prospective adoptive parent are statutory and are set out in

8

section 366.26, subdivision (n). . . . [¶] A designated prospective adoptive parent is entitled to notice prior to a change in placement[,] may file a petition objecting to a proposal to remove the child" and may "participate in the hearing." (*R.H.*, *supra*, 209 Cal.App.4th at pp. 372, 373.) Prospective adoptive parent status " 'does not make the caretaker a party to the dependency proceeding nor does it confer on the caretaker any standing to object to any other action of the department . . . .' " (*Wayne F.*, *supra*, 145 Cal.App.4th at p. 1334; see also § 366.26, subd. (n)(3)(C).) A prospective adoptive parent also does not have a due process right to counsel at a removal hearing. (*R.H.*, at pp. 373–374.)

In *Wayne F.*, the Department sought to remove a child from his prospective adoptive parents after parental rights had been terminated. The prospective adoptive parents filed a lengthy and substantive objection to removal, prompting the juvenile court to hold a special hearing to determine the prospective adoptive parents' procedural rights to participate in a section 366.26, subdivision (n) hearing. The court "ruled that although their petition prompted the need for a hearing, they could not offer evidence at the hearing or argument." (*Wayne F.*, *supra*, 145 Cal.App.4th at p. 1336.)

The prospective adoptive parents filed a petition for writ of mandate. The Court of Appeal found the juvenile court erred, concluding that prospective adoptive parents "have standing to fully participate in any removal hearing conducted under subdivision (n). Subject to the same discretion the juvenile court exercises over any litigant appearing before it, in a hearing under subdivision (n) [prospective adoptive parents], like other litigants, may offer evidence, examine witnesses, provide the

9

court with legal authorities and make arguments to the court." (*Wayne F., supra*, 145 Cal.App.4th at p. 1334.)

The Department argues this case is distinguishable because A.R. never objected to removal and did not attempt to participate in the section 366.26, subdivision (n) hearing until after the cause had been submitted to the court for decision. We agree this case is distinguishable on its facts. A.R. never filed a petition objecting to removal.

Before oral argument in this appeal, we asked the parties to address this question, among others: Does the failure to file an objection to the proposed removal of a child from a prospective adoptive parent preclude her from participating in and presenting evidence at a removal hearing set by the court sua sponte? At oral argument, counsel for the Department acknowledged that a prospective adoptive parent who did not file an objection is not barred from participating in a removal hearing that the court set sua sponte, and the court has discretion to permit such a prospective adoptive parent to participate in the hearing. The Department's position is consistent with *Wayne F.*, which acknowledged prospective adoptive parents may participate in a section 366.26, subdivision (n) hearing "[s]ubject to the same discretion the juvenile court exercises over any litigant appearing before it." (*Wayne F., supra*, 145 Cal.App.4th at p. 1334.)

Under the circumstances of this case, we find the court abused its discretion. The juvenile court should have invited A.R. to address the court, or asked her if she had anything to add before deciding the matter. We do not hold that in every removal hearing, the court must permit a prospective adoptive parent who did not file an objection to participate in a removal hearing. The

circumstances of this case, including in particular the COVID-19 pandemic protocols, compel us to find an abuse of discretion here, as we explain below.

We are mindful that A.R. did not attempt to participate in the hearing until after the court had begun to state its findings and decision.  We recognize that it is disruptive for a participant in a hearing to interrupt the court and disrupt proceedings.  However, we cannot fault A.R. in this case, given that the hearing was conducted remotely because of the COVID-19 emergency; and more to the point, because the court never prompted A.R. to participate, as the court had done with counsel for the Department and the child.  The court's published guide for remote hearings specifically advises parties to only "[s]peak when prompted.  [¶]  Litigants, listen for cues from your attorney (if you have one), the judicial officer, and the judicial assistant.  Unless one of them has prompted you to speak, it's not your turn."  (See LACCWhatyouneedUG.pdf, p. 70, boldface omitted, available at <https://my.lacourt.org/laccwelcome> [as of July 6, 2021] archived at <https://perma.cc/HJ6Z-TF3K>.)  Since A.R. was never given a turn to speak, and she appeared by WebEx, which does not afford an unrepresented person the same opportunity as one might have in court to assess when and whether it is appropriate to seek permission to address the court, A.R.'s only recourse was to interrupt the court in a last-ditch attempt to be heard, at which point she was threatened with ejection from the hearing.

We cannot find the error to be harmless.  (*In re R.L.* (2016) 4 Cal.App.5th 125, 143–146 [discussing harmless error].)  We cannot speculate about what A.R. would have contributed to the hearing, or what influence it may have had on the court's ruling.

11

As stated in *Wayne F.*, "participation of [prospective adoptive parents] at removal hearings is the most effective means of meeting the Legislature's expressed direction that the juvenile court . . . determine whether removal is in a child's best interest." (*Wayne F., supra*, 145 Cal.App.4th at p. 1342.)

Because we find the court erred when it excluded A.R. from participating in the hearing, we need not address A.R.'s other claims of error.

**5.    Failure to Conduct a Placement Preservation Hearing**

Lastly, at the conclusion of her opening brief, A.R. states, without any meaningful analysis, that "both [the Department] and the [juvenile] court declined to follow the statutory mandate of section 16010.7(b) and allow [a placement preservation] meeting to strategize a safety plan for [J.B.] to take place." The record is silent as to whether a placement preservation meeting was conducted or contemplated, and A.R. has failed to sufficiently develop this argument for consideration by the court. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

### DISPOSITION

The petition is granted, and the matter is remanded to the juvenile court with instructions to conduct a new section 366.26, subdivision (n) hearing at which A.R. is to be given notice and an opportunity to be heard. We express no opinion as to how the court should rule at the hearing in deciding the child's best interests.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.          WILEY, J.

12