Filed 2/17/26  In re B.H. CA2/4

**REDACTED**
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re B.H. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B348061 <br><br> (Los Angeles County <br> Super. Ct. No. 17CCJP01644E,F) |
| CRISTAL P. et al., <br><br>     Petitioners, <br><br>     v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br>     Respondent; <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERCIVES, <br><br>     Real Party in Interest. | |

ORIGINAL PROCEEDINGS in extraordinary writ.  Georgia Huerta, Judge.  Petitions denied.

Los Angeles Dependency Lawyers, Inc., Emily Berger and Sue P. Dell for Petitioner C.P.

Sarah Liebowitz for Petitioner B.H.

No appearance for Respondent.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Principal Deputy County Counsel, for Real Party in Interest.

_____

Cristal P. and Miguel M. were prospective adoptive parents (PAPs) of B.H. (born May 2012) and E.G.V. (born June 2016). Cristal and Miguel assumed custody of B.H. and E.G.V. during dependency proceedings involving their parents whose parental rights were terminated. The Los Angeles County Department of Children and Family Services (DCFS) subsequently removed the children from the PAPs custody after allegations of physical abuse. The juvenile court found that removal was in the children's best interest. B.H. and Cristal (collectively, petitioners) filed writ petitions challenging the court's removal order. (Welf. & Inst. Code, § 366.26; Cal. Rules of Court, rule 8.456.)[1] Miguel filed a "joinder" in the writ petitions.[2] We deny the petitions.

_____

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     We consider the document filed on behalf of Miguel to be a statement of support for the positions asserted and relief requested by Cristal and B.H., rather than a separate petition to review the juvenile court's order. (See Cal. Rules of Court, rule 8.452(b) [detailing requirements for a writ petition under § 366.26]; cf. *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1391 [although "standard practice" permits parties to join in each other's arguments, "joining in an argument is different from joining in a motion";

## FACTUAL AND PROCEDURAL HISTORY[3]

I.  *Dependency Proceedings on Initial Petition and Termination of Parental Rights*

[REDACTED.]

[REDACTED.]

[REDACTED.]  As of December 2019, the children were placed in the home of Cristal and her sister, Jasmin.  In May 2020, Cristal and her partner, Miguel, moved into a new home with the male siblings: B.H., E.G.V., and E.M.  [REDACTED.]

[REDACTED.]

In July 2023, the juvenile court terminated parental rights as to B.H. and E.G.V. and designated Cristal and Miguel as the PAPs.  [REDACTED.]

II.  *Emergency Removal*

On August 15, 2024, a social worker observed bruises on B.H.'s forearm and a healed burn mark on his shoulder two inches long and one inch wide.  B.H. stated it happened while cooking with Cristal, but he did not remember the details on how he got the burn mark or the bruises.  B.H. denied physical abuse.  The social worker expressed concern as this was the third report alleging Cristal was physically abusing the children.  E.M. also provided an

absent compliance with procedural requirements for a properly filed motion, party "joining" other party's motion lacks standing to seek relief from the court].)

[3]     This record on appeal includes confidential information.  Accordingly, we have filed both a redacted and a sealed opinion.  Our redacted opinion, which is part of the public record, does not include facts derived from the confidential information.  Our unredacted, sealed opinion is filed concurrently with this redacted opinion.

audio recording to the social worker where he is crying because Cristal hit him. E.M. immediately denied he told the social worker that she was hitting him in the recording.

B.H. was medically examined by a Los Angeles County Medical Hub clinic. The examination revealed an "old scar loop pattern to upper left arm," and a "pale red, pink, yellow loop pattern bruise to right lower back. This is consistent with physical abuse." The drawing showed a linear bruise just above the loop pattern bruise on B.H.'s lower back.

On August 23, 2024, DCFS filed a notice of emergency removal of B.H. and E.G.V., based on an immediate risk of harm to the children. The children were removed at this time. On August 26, 2024, Cristal filed an objection to removal and denied the allegations. The court set a hearing date pursuant to section 366.26, subdivision (n).[4]

B.H., E.G.V., and Cristal consistently denied any physical abuse. However, J.O. disclosed to the social worker that Cristal would hit her brothers, B.H. and E.G.V. J.O. stated that Cristal made B.H. bleed once and E.G.V. suffered a bump on his nose. [REDACTED.] E.G.V.'s psychiatrist (Dr. Shin) stated that the children were suggestible, and opined that E.G.V.'s ongoing contact with Cristal might color his statements about the allegations. Dr. Shin wanted a forensic psychologist to evaluate E.G.V.

III.  *School Attendance and Behavior*

On December 16, 2024, B.H. was almost suspended after he brought a toy gun (a "BB" gun) and wore an inappropriate sweater to school. B.H. got

---

[4]  The date of the section 366.26, subdivision (n) hearing was subsequently continued several times, as discussed in more detail below.

these items from Jasmin's house. On January 10, 2025, E.G.V. was suspended for taking a BB gun to school and pointing it at other children.

On February 11, 2025, E.G.V.'s school principal reported that she had seen "immense improvement and change" since E.G.V. had been removed from Cristal's care. His attendance and school performance had improved. The principal noted that in the past, the school could not even assess E.G.V. because Cristal did not make herself available for school meetings or teacher conferences. The school psychiatrist and the education specialist agreed with this assessment. On March 6, 2025, B.H.'s principal, assistant principal, and school psychologist also communicated to the social worker that B.H.'s behavior since being removed from Cristal's home had improved.

[REDACTED.]

IV. *Removal Hearing*

The juvenile court held the section 366.26, subdivision (n) hearing on July 17, 18, 30, and 31, 2025. At the outset of the hearing, the court stated that the issue presented was "whether or not the children should have been removed." The court emphasized that DCFS had the burden of proof.

a. *B.H.'s Testimony*

B.H. denied Cristal hit him or that he saw her hit any other children in the home. He further denied that Cristal told him what to say to the social workers. B.H. explained the mark on his upper arm was from cooking with Cristal. When he flipped a piece of chicken in the oil, it "popped" up and something hit his arm. He stated it was either the tongs or the chicken, but he was not sure.

5

### b. *E.G.V.'s Testimony*

E.G.V. denied Cristal ever hit him or that he saw her hit anyone with a belt.

### c. *J.O.'s Testimony*

J.O. testified she would have visits with her brothers when she was placed with Jasmin and they were living with Cristal. During one of the visits, she saw a little bump on E.G.V.'s nose. She asked what happened, and E.G.V. told her Cristal hit him with the metal part of a belt. Jasmin, who was next to J.O., told Cristal that Cristal needed to train E.G.V. better so that he would not say what happened in the house. J.O. did not tell a social worker about E.G.V.'s disclosure because she was scared that she and her siblings would be taken away. J.O. said she was revealing this information now because she did not want her brothers to return to Cristal and be abused again. She believed both B.H. and E.G.V. were unsafe in Cristal's home.

J.O. testified she saw "a little bit" of physical discipline of B.H. and E.G.V. by Cristal. However, she did not remember clearly because it had been so long ago. E.M. told J.O. that Cristal would shoot them with a BB gun, throw them in the pool, and that Cristal burned B.H. J.O. reported the incident with E.G.V.'s nose to the social worker in 2023, after she had left Jasmin's home. The social worker told her nothing could be done because the children were denying abuse.

### d. *E.M.'s Testimony*

E.M. said he wanted to testify to protect his brothers from Cristal. Cristal first began physically abusing the children by hitting them with belts "and then from there, [it] just kind of got, like, progressively worse." Cristal

6

would hit E.M. every time he got in trouble.  She would hit E.M.'s back with a belt, leaving marks.

E.M. recalled a referral in January 2023 that involved E.M., B.H., and E.G.V. being physically abused by Cristal.  At that time, E.M. testified Cristal would physically abuse him with cables, belts, coat hangers, her hands, phone chargers, broomsticks, kitchen tools, and back scratchers.  E.M. saw Cristal physically abusing B.H. "all the time."  E.M. witnessed Cristal abuse the other children with belts and cables.  When Cristal hit E.G.V. with a belt, he would curl into a ball, cry, and yell for her to stop.  Cristal would also heat up forks and other items, including a knife sharpener, and place them on the children's bodies.  On one occasion, he saw Cristal put a hot knife sharpener on B.H.'s arm, which left a burn mark.  B.H. was "yelling and crying."  E.M. wiped away tears while describing the abuse.

E.M. recalled E.G.V. having a black eye in March or April 2024.  He also recalled B.H. having a black eye and swelling on the bridge of his nose. E.M. did not see B.H. get the black eye, but he heard B.H. and Cristal arguing and then heard the hit.  Cristal was afraid to send B.H. to school with the black eye so she told him he did not have to go until the mark went away.

E.M. did not tell the social worker about the abuse because he was scared.  E.M. explained Cristal would threaten him that if he said anything he would be sent to a group home and that group homes were bad.  He stated that Cristal would sometimes tell the children that they were going to be removed.  The children were scared and cried throughout these incidents.

7

e. *Miguel's Testimony*

Miguel said he had no concerns about Cristal after hearing J.O. and E.M.'s testimony. Miguel was not concerned at all because the children were lying.

f. *Yunuen Munoz's Testimony*

Munoz was the primary continuing services social worker from September 2019 through August 2024. In early August 2024, DCFS's position was that it was in the children's best interest to be adopted by Cristal. After removal, B.H. and E.G.V. did not disclose abuse to Munoz. Munoz acknowledged the children were traumatized during the removal. Munoz stated that she considered whether there were safety measures or services to prevent the removal, but determined the PAPs already received the training through Wraparound and other foster parent training.

When B.H. and E.G.V. were detained, Munoz interviewed E.M. about the physical abuse allegations. E.M.'s demeanor was fearful and nervous. He recanted any allegation of abuse. During a later conversation in which E.M. reported abuse, he expressed fear he would not be believed.

g. *Yvette Sandoval's Testimony*

Sandoval took over the case as the primary social worker in September 2024. She was also present when the children were removed from Cristal's house. She testified that she did not believe B.H.'s and E.G.V.'s denials of abuse by Cristal. Sandoval opined that E.G.V.'s tumultuous behavior was in part due to the treatment the children received from Cristal. Sandoval consulted with E.G.V's psychiatrist Dr. Shin about E.G.V., and Dr. Shin's opinions played into her recommendations.

### h. *Cristal's Testimony*

Cristal testified she was amenable to services if the children returned to her care. Cristal said she was still fighting to get B.H. and E.G.V. back because she saw them as her children.

### i. *Closing Arguments*

Cristal, Miguel, B.H., and E.G.V. argued that it was not in the best interest of the children to be removed from the PAPs. Counsel for DCFS preliminarily noted that this was a "tough case" but argued that it was in the children's best interest to be removed from the PAPs. Counsel explained that the children "have been abused, and we do not want to put them in a foster home in which they will continue to be abused."

### j. *Juvenile Court's Ruling*

The juvenile court stated it listened to hours of testimony and read the multiple reports filed in this case. The court noted that the children had been placed with the PAPs for five years. The court understood "that children bond with people, sometimes regardless of how those people may treat them." While the court considered the children's statements, it primarily looked to independent evidence to reach its decision. The court stated that the "burden of proof is preponderance of the evidence that it is . . . in the best interest of these children to be removed from their [PAPs]."

The court found that DCFS had been working with the PAPs for years to preserve the placement. The court noted the children missed a large number of school days while in the PAPs' care, and after the school had reached out to Cristal about this issue, she did not address it. The court further noted the children could have been removed multiple times

9

throughout the years based on Cristal's failure to make herself available to DCFS. The court stated that E.G.V. had improved in school outside of the PAPs' custody, but cautioned that it may not be important. The court further stated that B.H. had been getting into fewer fights at school. In addition, his behavior had improved overall at school. The court was specifically concerned about the incident involving Cristal giving B.H. clippers at school, which almost resulted in a suspension.

Moreover, the juvenile court noted there were prior referrals for physical abuse, but DCFS did not use those referrals as grounds for removal and instead preserved the placement. The court highlighted the Hub report that found two different types of marks consistent with child abuse. The court stated that B.H. gave different explanations about the loop pattern bruise on his back. The court relied, in part, on Dr. Shin's recommendation that E.G.V. be referred to a forensic psychiatrist because his statement could be influenced by Cristal.

The court ultimately found that it was in the children's best interest not to return them to the care and custody of the PAPs. The court concluded by stating, "the 366.2[6](n) motion to return the children to their prospective adoptive home at this time is denied."

After the court's ruling, B.H. made a statement to the court that he changed his behavior after removal because he did not want his behavior to be a reason he was not returned to the PAPs. B.H. felt his improved behavior was being used against him. Before and after B.H.'s statement, the court emphasized that its ruling was not B.H.'s responsibility or burden, and that there was nothing the children did or failed to do that led to the decision. The court stated it did not rest its ruling on the statements of any one of the

party witnesses, however the court did consider all of them.  The court stated it made its decision "based on a multitude of things."

Miguel, Cristal, and B.H. filed notices of intent to file writ petitions.

## DISCUSSION

I.     *Applicable Law and Standard of Review*

"It is well settled that at the beginning of a dependency case, the statutes focus on promoting family reunification, if possible, because in most cases this goal serves the child's best interest.  (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 672–673.)  After the court terminates services, the applicable statutes reflect a shift in policy toward promoting a permanent and stable environment for the child.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.)"  (*Amber G. v. Superior Court* (2022) 86 Cal.App.5th 465, 489 (*Amber G.*).)

Section 366.26, subdivision (n) governs the procedure for judicial review of the removal of a dependent child from a prospective adoptive parent. (§ 366.26, subd. (n)(3) & (4).)  If the removal is undertaken under emergency circumstances, to alleviate an immediate risk of physical or emotional harm, DCFS may remove the child prior to holding a hearing.  (§ 366.26, subd. (n)(4).)  The juvenile court has the authority and responsibility to determine whether removal from the home of a prospective adoptive parent is in the child's best interests.  (§ 366.26, subd. (n)(3)(B).)  If the prospective adoptive parent files a petition objecting to the removal, the juvenile court must conduct a hearing and determine whether the proposed removal of the child from the home of the prospective adoptive parent is in the child's best interest.  (§ 366.26, subd. (n)(3)(B), (4).)  The agency bears the burden of

11

proving by a preponderance of the evidence that the child's best interest requires removal.  (*In re M.M.* (2015) 235 Cal.App.4th 54, 60 (*M.M.*).)

The concept of best interest in the dependency context has been described as "an elusive guideline that belies rigid definition."  (*Adoption of Michelle T.* (1975) 44 Cal.App.3d 699, 704.)  "Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult."  (*Ibid.*, accord, *State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 286.)  Notwithstanding its vague contours, the Supreme Court has described "the goal of assuring stability and continuity" as a "primary consideration in determining the child's best interest" (*In re Stephanie M., supra*, 7 Cal.4th at p. 317) and has instructed, at a hearing to consider a change in placement, that the court must consider the child's current circumstances.  (*Id.* at p. 322.)

"A juvenile court's decision to authorize a change in the minor's placement is reviewed for abuse of discretion.  [Citation.]  But we must also review the juvenile court's finding that the change is in the minor's best interests to determine whether there is substantial evidence in the record to support it."  (*In re M.M., supra,* 235 Cal.App.4th at p. 64.)  We defer to the juvenile court's assessment of witness credibility (*T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 47), and we review the record in the light most favorable to the juvenile court's findings.  (*In re L.M.* (2019) 39 Cal.App.5th 898, 913.)  "'"'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"'"  (*Id.* at p. 914.)  "We may not reweigh or express an independent judgment on the evidence."  (*Ibid.*)

II.    *Removal Order*

Petitioners invite us to reweigh the evidence which is inconsistent with our standard of review. There is sufficient evidence of physical abuse to support the juvenile court's finding that removal was in the children's best interest. As highlighted by the court, B.H.'s Hub report determined that the two marks on his body were consistent with physical abuse. The court found B.H.'s differing explanations for his injuries not credible.[5] E.M.'s and J.O.'s accounts were corroborated by the report's determination of physical abuse.

E.M. testified to his observations and personal experience of physical abuse in Cristal's house. E.M. stated that he witnessed Cristal abuse B.H. and E.G.V. with belts and cables. He emphasized that Cristal abused B.H. "all the time." In one incident, Cristal put a hot knife sharpener on B.H.'s arm, which left a burn mark. J.O. testified E.G.V. disclosed that Cristal had hit him with a metal part of a belt, resulting in a bump on his nose. J.O. also testified that she observed physical discipline of both B.H. and E.G.V. In addition, E.M. had disclosed to her that Cristal would shoot them with a BB gun, throw them in the pool and that Cristal burned B.H. Both E.M. and J.O. either recanted, denied, or delayed reporting out of fear the siblings would be taken away and separated. E.M. further testified to Cristal coaching and manipulating the children not to disclose the abuse. After removal, [REDACTED] and E.G.V.'s psychiatrist separately expressed concern that the children were being coached by Cristal.[6]

---

[5]    We find no basis for Cristal's assertion that the juvenile court "dismissed" from consideration the physical abuse allegations and exclusively relied on the children's improved school attendance and behavior as the grounds for removal.

[6]    B.H. contends the juvenile court did not make an explicit finding on the reported physical abuse. We agree. However, it is clear from the record that

13

Contrary to petitioners' contention, the juvenile court properly looked to the children's school attendance and behavior in assessing their best interest. Given the lapse in time, the court must consider the child's current circumstances (*In re Stephanie M., supra,* 7 Cal.4th at p. 322) and should also consider events that have occurred since the removal in determining the children's best interest (*State Dept. of Social Services v. Superior Court, supra,* 162 Cal.App.4th at pp. 276, 287). As noted by the court, both children, especially E.G.V., improved in their school attendance and overall behavior after they were removed from the PAPs. Furthermore, Cristal and her family negatively impacted the children's improvement in school after removal in at least three ways. First, [REDACTED]. And second, B.H. was also almost suspended for bringing a BB gun to school and wearing an inappropriate sweater, both of which he got from Jasmin's house. Finally, E.G.V. was actually suspended for bringing the same BB gun to school.

Cristal contends the juvenile court misapplied the burden of proof based on the court's statement that the section 366.26 subdivision (n) motion to return the children was denied. We disagree. At the outset of the hearing, the court explicitly stated that DCFS bore the burden of proof for removal. The court, at no point, indicated that the PAPs shared in that burden. In any event, we agree with DCFS that any misstatement by the juvenile court could have easily been corrected had a party objected. Because there was no objection, Cristal forfeited the issue on appeal. (See *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 810–811.)

---

the court made an implicit finding in its discussion of B.H.'s Hub report and its determination that B.H.'s explanations for his injuries were not credible. In addition, an explicit finding of physical abuse on the record is not required by statute. (See generally § 366.26, subd. (n).) B.H. cites no authority to the contrary.

14

B.H. argues the juvenile court did not properly consider his stated desire to be with Cristal and his bond with the PAPs. B.H. relies on *In re Michael D.* (1996) 51 Cal.App.4th 1074 (*Michael D.*). We find this case procedurally and factually distinguishable. *Michael D.* arose from the granting of a section 388 petition filed by the child's mother seeking to modify the permanent plan and terminate legal guardianship. (*Id.* at pp. 1077–1078.) The juvenile court found the mother met her burden of proving a change of placement was in the child's best interest. (*Id.* at p. 1080.) The court found "no evidence of risk to [the child] from living in either home," and therefore relied on the child's preference to live with his mother. (*Id.* at p. 1088.) The appellate court affirmed the court's order. (*Ibid.*) Here, in contrast, there was sufficient evidence that Cristal physically abused both B.H. and E.G.V. This is not a case where the juvenile court was merely choosing between two appropriate placements.

In the same vein, Cristal contends the juvenile court did not give sufficient weight to the children's bond with the PAPs. She cites *Amber G., supra,* 86 Cal.App.5th 465 and *M.M., supra,* 235 Cal.App.4th 54 to support her position. Like *Michael D.*, these two cases involved the juvenile court removing a child from one suitable placement to another and weighing the child's bond with the PAP against the proposed relative caregiver. (*Amber G., supra,* 86 Cal.App.5th at p. 499; *M.M., supra,* 235 Cal.App.4th at p. 64.) In *Amber G.,* the appellate court reversed the juvenile court's order removing the child from a PAP to another "appropriate" home. (*Amber G., supra,* at p. 499.) The court reasoned that there was no evidence presented that removal was in the child's best interest. (*Id.* at pp. 449–500.) In *M.M.,* the appellate court reversed the juvenile court's order removing the child from a PAP and placing her with an aunt. The court stated that the child barely knew the

aunt, who merely offered an appropriate placement. The court concluded a blood relative's approved home was insufficient evidence to prove removal was in the child's best interest. (*M.M., supra,* 235 Cal.App.4th at p. 64.) Again, the case at hand is factually distinguishable given the strong evidence of physical abuse in the home.

Accordingly, substantial evidence supports the juvenile court's finding that B.H. and E.G.V. suffered physical abuse and that continued removal was in the children's best interest.


III.     *Delay of Removal Hearing*

Cristal challenges the numerous delays in holding the contested 366.26, subdivision (n) hearing. She exclusively relies on *In re R.F.* (2023) 94 Cal.App.5th 718 (*R.F.*). In *R.F.*, DCFS removed the children from the PAP on an emergency basis and the PAP filed an objection. (*Id.* at p. 723.) However, the juvenile court never set a hearing on the removals and did not address the PAP's objection. The juvenile court then denied the PAP's section 388 petition, asking for the return of the children and claiming she was never notified of her right to file objections to, and request a hearing on, the removals. (*Id.* at pp. 723–724.) The appellate court reversed, holding that the PAP was entitled to notice of the removals as well as a hearing on the issue. (*Id.* at pp. 734–735.) Therefore, the court directed the matter to "be remanded for a hearing to determine whether the removals 'should be made permanent' or the [child] should be returned to [the PAP's] care." (*Id.* at p. 735.)

*R.F.* is not on point. Cristal does not dispute that she was given proper notice, filed an objection to the removal, and had a full hearing on the issue. While it is unfortunate that the hearing was delayed by almost one year after

16

removal, Cristal concedes that no party raised the issue of timeliness or pressed the juvenile court to hear the matter at an early date. Cristal is therefore precluded from obtaining review of this issue on appeal. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) She has not demonstrated that this case presents an important legal issue in which the general forfeiture rule should not be applied. (*Ibid.*; *In re M.S.* (2019) 41 Cal.App.5th 568, 589, overruled on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8.) Furthermore, we agree with DCFS that there is no feasible remedy for the delayed proceeding as the contested hearing on the removal has already been held. (See *R.F., supra,* 94 Cal.App.5th at p. 727; see also § 366.26, subd. (n)(3)(B).)

IV. *Equal Protection*

Cristal contends, as a PAP (§ 366.26), she is afforded fewer procedural protections from removal of a child than a legal guardian (§ 387),[7] which in turn violates the equal protection clause of the United States Constitution.[8] Once again, Cristal did not raise this objection in the juvenile court; thus, it has been forfeited. (*In re S.B., supra,* 32 Cal.4th at p. 1293.) In any event, the argument lacks merit.

"'The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the

---

[7] Section 387 provides that an order that changes a previous order by removing a child "from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home" shall be made only after a noticed hearing on a supplemental petition.

[8] Because Cristal was granted de facto parent status after removal, we only focus on the equal protection argument as to removal proceedings for PAPs and legal guardians.

17

equal protection of the laws.'" (*In re Williams* (2020) 57 Cal.App.5th 427, 433.) To prevail on an equal protection challenge, a party must first establish that "the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530, italics omitted.) If such a classification of similarly situated individuals exists and does not affect a fundamental right or a legally suspect class, the next inquiry is whether the classification is reasonably related to a legitimate government interest. If so, it must be upheld against an equal protection challenge. (See *Warden v. State Bar* (1999) 21 Cal.4th 628, 644.)

Cristal's argument fails on the first prong because PAPs and legal guardians are not similarly situated in removal proceedings. At the time of a removal proceeding under section 366.26, subdivision (n), a PAP is not a permanent placement and does not hold parental rights over the child. (See *R.H. v. Superior Court* (2012) 209 Cal.App.4th 364, 375 [a PAP has "no fundamental liberty interest in the child"].) Moreover, a PAP is merely a designation of the current caretaker that has lived with the child for at least six months, expressed a commitment to adopt the child, and has taken at least one step to facilitate the adoption process. (§ 366.26, subd. (n)(1).) On the other hand, at the time of a removal proceeding under section 387, a legal guardian has parental rights over the child as he or she is viewed a permanent placement (unless or until those rights are terminated by the juvenile court). (See *In re A.O.* (2004) 120 Cal.App.4th 1054, 1060–1061 [§ 387 no longer applies after parental rights are terminated].)

Because Cristal has failed to establish PAPs and legal guardians are similarly situated in removal proceedings, we need not move to the second prong of the analysis. Accordingly, we conclude Cristal failed to demonstrate a plausible equal protection argument on appeal.

18

## DISPOSITION

The petitions are denied. Our decision is final as to this court immediately. (Cal. Rules of Court, rules 8.450(a), 8.490(b)(2)(A).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


TAMZARIAN, J.


19